William E. WAITES and Richard G. Pinkett, individually and on behalf of a class of all persons similarly situated, Plaintiffs,

v.

FIRST ENERGY LEASING CORP., et al., Defendants.

and

Bruce E. KAHLER, Plaintiff,

v.

FIRST ENERGY LEASING CORP., et al., Defendants.

Nos. 84 C 10257, 84 C 11001.

United States District Court, N.D. Illinois, E.D.

March 28, 1985.

---

William Gleeson, Arnold A. Pagniucci, Fay Clayton, Charles J. Ryan, Jr., Joy K. Fallon, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiffs.

Francis J. Higgins, John W. Rotunno, Thomas L. Fink, Bell, Boyd & Lloyd, Chicago, Ill., Leon P. Gold, Fran M. Jacobs, Mary W. Richardson, Shea & Gould, New York City, for defendants Touche Ross & Co. and Thomas P. Flanagan.

### ORDER

BUA, District Judge.

Before the Court is the motion of the defendants Touche Ross & Co. and Thomas P. Flanagan to transfer these actions to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, defendants' motion is' granted and the cases are transferred to the U.S. District Court for the Eastern District of New York.

### I. FACTS

These actions are brought by plaintiffs William E. Waites, Bruce Kahler, and Richard G. Pinkett, who purchased the defendants' tax-shelter securities in Chicago, Illinois, Tulsa, Oklahoma, and Chagrin Falls,

Ohio, respectively. Plaintiffs have alleged the existence of a nationwide securities fraud scheme involving fifty-five defendants. Defendants Touche and Flanagan have jointly moved under 28 U.S.C. § 1404(a) to transfer this action to the Eastern District of New York. Defendant Stuart Becker & Company joined in and adopted Touche's motion to transfer. Defendants Zayle A. Bernstein and Bernstein, Bernstein, Bernstein, Stein & Rush (BBBS&R) joined in plaintiffs' opposition to the transfer.

These suits involve allegations that the defendants created or otherwise participated in a sophisticated tax shelter scheme designed to defraud investors by inducing them to invest in certain energy management equipment to be installed in business or industrial facilities. Essentially, plaintiffs' complaint alleges that the energy management system was leased to various entities who would then sell an energy savings service to commercial users of energy. Plaintiffs also allege that participation in this program was marketed nationwide through a promotional package entitled "Energy Systems Equipment Leasing Program." This promotional material allegedly incorporated independent engineering appraisals of the equipment in question, a description of the Energy Minder Systems, a tax opinion and legal opinion prepared by Bernstein and BBBS&R, a supporting tax opinion prepared by Larry Kars, accounting information prepared by Touche as well as other representations concerning the program and the relationships between the various participants.

There are three other civil actions filed alleging fraud in this energy leasing tax shelter scheme. The other actions are against many of the defendants named in this case and are pending in the Western District of Michigan and the Northern District of Georgia. In addition, certain defendants have filed a motion to transfer the actions to this Court for consolidated pretrial proceedings with the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407.

There are three other actions related to the alleged fraudulent tax scheme. First, there is an investigation by the New York Attorney General, naming many of the same defendants, entitled *In re An Inquiry of the Attorney General of the State of New York pursuant to Article 23–A of the General Business Law in regard to the practice of First Energy Leasing Corp., et al.,* Index No. 41457/84 ("In re First Energy"). Second, there is a civil tax fraud action brought by the United States in the Eastern District of New York, entitled *United States v. OEC Leasing Corp., et al.,* CV 84–4112. Finally, defendant First Energy Leasing obtained a Temporary Restraining Order in New York state court to prevent Touche Ross from interfering with First Energy's use of Touche's Report in the marketing of the securities.

## II. DISCUSSION

■ Section 1404(a), 28 U.S.C., provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In order to show that transfer of venue is proper, the moving party must establish that (1) venue is proper in the transferor court; (2) venue is proper and in the transferee court, and (3) the transfer is for the "convenience of the parties and witnesses, in the interest of justice." *Central States, Southeast and Southwest Areas Pension Fund v. Brown,* 587 F.Supp. 1067, 1069 (N.D.Ill.1984). Although the party seeking transfer bears the burden of establishing that a transfer of venue is proper, the burden under § 1404(a) is substantially less than a transfer under the doctrine of forum non conveniens. *Id.; see Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed.2d 789 (1955).

### A. *Venue*

■ Jurisdiction for the plaintiffs' complaint is grounded upon 15 U.S.C. §§ 77v, 78aa. Venue is proper under § 77v where

"the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if defendant participated therein, ..." 15 U.S.C. § 77v. Venue is proper under § 78aa where "the defendant is found or is an inhabitant or transacts business, ..." 15 U.S.C. § 78aa.

In the present case, participation in the alleged fraudulent tax shelter scheme was sold in Chicago; two defendants reside in Chicago; and eighteen defendants reside in the Eastern District of New York. Thus, venue is proper in both transferor and transferee districts.

### B. *Plaintiffs' Choice of Forum*

■ Plaintiffs' choice of forum is entitled to substantial weight unless that forum lacks any significant contact with the underlying cause of action. *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill.1982). In the present case, the only relationship to this district is the sale of the tax shelter and the fact that defendants Touche and Flanagan reside here. Plaintiffs make no showing that any activities by Touche and Flanagan in Chicago contributed to the underlying tax fraud scheme. Whether the defendant promoters and manufacturers are liable for misrepresenting the value of their tax shelters and, if so, the amount of that liability are issues which have no relationship to this district. The alleged fraudulent tax shelter scheme arose out of the promoters' activities in the Eastern District of New York and some of the energy management systems were manufactured there. Since the plaintiffs' choice of forum lacks any significant contact with the underlying cause of action, their choice of forum will not be given substantial weight, but rather will be given "equal consideration along with other factors which must be considered under § 1404." *Id.* at 1051.

### C. *Convenience of the Parties and Witnesses*

Plaintiffs' complaint alleges that the defendants, in the course of offering and selling the tax shelter, made fraudulent misrepresentations in overvaluing the energy management systems. According to the New York Attorney General's investigation, some of the units were manufactured in New York and some in Florida. However, all of the promoters reside in and around the Eastern District of New York. In addition, the Touche Report came out of the New York office of Touche Ross. Many of the individual defendants are officers and employees of the promoters, manufacturers and suppliers.

The greatest geographic dispersion among defendants is in the group of service companies, which are spread throughout the country. However, the testimony of officers and employees of the service companies will not be nearly as important as the testimony of the officers and employees of the promoters, manufacturers and suppliers, most of which are located in the Eastern District of New York. Plaintiffs argue that they will contribute important testimony to this case and the fraud allegations. However, there is no indication that any of the investors had knowledge of the scheme to overvalue the systems before or at the time of the alleged fraudulent offering and sales.

■ In considering the convenience of potential witnesses, the court must consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case. *Central States, Southeast and Southwest Areas Pension Fund v. Brown, supra,* 587 F.Supp. at 1070. The principal witnesses are those material to the court's decision on a motion to transfer under § 1404(a). *SEC v. First Nat. Finance Corp.*, 392 F.Supp. 239, 241 (N.D.Ill.1975). In the present case, it is clear that the number of important material witnesses is greatest by far in the Eastern District of New York and therefore the convenience of the witnesses favors transfer there.

Regarding the convenience of the parties, eighteen defendants reside in the Eastern District of New York: two of the three promoters, nine of twenty-two indi-

vidual defendants, two of three suppliers, one of three manufacturers, and three of eleven service companies. Seven other key defendants are located in New York City, adjacent to the Eastern District of New York, and seven more defendants are located in Pennsylvania, predominantly in Philadelphia. Ten defendants are located in Florida. The remaining thirteen defendants are spread over Texas (3), California (2), Illinois (2), and one each in New Jersey, Ohio, Washington, Maryland, Connecticut, and Massachusetts. On balance, therefore, it is reasonable to conclude that the Eastern District of New York, where more key defendants are located than any other district, is a more convenient forum for the defendants and the principal witnesses. *SEC v. First Nat. Finance Corp., supra,* 392 F.Supp. at 241.

### D. *Interests of Justice*

As a general rule, cases should be transferred to districts where related actions are pending. *Id.* While these are not cases which can be consolidated with cases pending in the transferee district, *id.,* the pendency of a dissimilar action is a factor favoring transfer when duplication of discovery efforts could be avoided by proper judicial coordination. *Impervious Paint Indus. Ltd. v. Ashland Oil,* 444 F.Supp. 465, 468 (E.D.Pa.1978). In the present case, it is likely that the civil tax fraud action brought by the government in the Eastern District of New York will yield discovery on the issue of overvaluation of the energy management systems—an issue which is relevant to the allegations of fraud and misrepresentation in these cases. Therefore, the presence of the related discovery in *U.S. v. OEC Leasing Corp., et al., supra,* favors the transfer of this action to the Eastern District of New York.

In addition, most of the documentary evidence will likely be located in the Eastern District of New York where the promoters and creators of the alleged fraudulent tax shelter scheme reside. The location of documentary evidence, including corporate books and records, is a proper factor in considering the interest of justice.

*Hess v. Gray,* 85 F.R.D. 15, 26 (N.D.Ill. 1979); *SEC v. First Nat. Finance Corp., supra,* 392 F.Supp. at 241, 242. Therefore, the presence of most of the documentary evidence relevant to these cases in the Eastern District of New York favors the transfer of these actions there.

### III. CONCLUSION

The presence in the Eastern District of New York of most defendants, principal witnesses, documentary evidence, and a related action establishes a "clear balance of inconvenience" compelling this Court to transfer these cases. Therefore, the defendants' motion to transfer these actions to the Eastern District of New York is granted.

IT IS SO ORDERED.