ANDERSON ELECTRIC, INC., Plaintiff-Appellant, v. LEDBETTER ERECTION CORPORATION, Defendant (C-E Walther, Inc., Defendant-Appellee).

Fourth District   No. 4—84—0860

Opinion filed June 10, 1985.—Rehearing denied July 11, 1985.

Stephen R. Kaufmann and Stephen A. Tagge, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Gary M. Peplow and David L. Requa, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Sangamon County which dismissed count II of its fourth amended complaint against defendant C-E Walther, Inc. Count I against Ledbetter Erection Corporation still pends below. The trial court made the appropriate findings under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

The facts drawn from the allegations of the fourth amended complaint indicate that plaintiff Anderson Electric, Inc. (Anderson), was a subcontractor of Ledbetter Erection Corporation (Ledbetter). Anderson was hired by Ledbetter to perform electric work on two precipitator units being constructed at the Kincaid Commonwealth Edison station. Defendant C-E Walther, Inc. (Walther), was the manufacturer of the units, the author of the construction manual, and the construction supervisor on the project. There was no direct contractual relationship between Anderson and Walther. It was alleged that such existed between Ledbetter and Walther, but its nature was not detailed.

Anderson's contract with Ledbetter provided that Anderson was to perform all electrical work according to the specifications in the Ledbetter-Walther contract. Anderson alleged that it so performed and that its work was initially accepted; but subsequently the same work was rejected and Anderson was required to redo portions at an increased cost of $288,802.48.

A provision incorporated in the Anderson-Ledbetter contract stated that Walther's field supervisor would hold regular jobsite meetings to insure orderly and expeditious completion of the work. The precipitator construction manual, which was authored by Walther and was incorporated by reference in the Anderson-Ledbetter contract, set forth Walther's functions and responsibilities as construction superintendent in detail. Walther's functions included regular inspections of the jobsite to insure the quality and workmanship of the work done, and to approve portions of the project as they were installed. If portions of the work were found to be unacceptable, Walther was to promptly inform the contractor of the defect in order to permit prompt correction. Walther's responsibilities included the inspection of materials and work done for compliance with the specifications. Specific inspection procedures and check lists were also set forth in the construction manual. Anderson alleged that Walther breached its duty to Anderson by failing to hold regular jobsite meetings, by supplying faulty materials, by giving improper directions regarding the performance of Anderson's work, by failing to properly inspect the work done on an ongoing basis, and by failing to stop the work when it knew or should have known that the work was not acceptable.

The trial court's decision was based expressly on its interpretation of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. In its memorandum opinion the court analyzed the defect, risk, and manner in which the injury arose, and concluded that the claim was more appropriate to a contract action than to tort.

The arguments of the parties center about their respective inter-

pretations of *Moorman* and two appellate decisions which have offered their own expositions on the same subject: *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, and *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 471 N.E.2d 915.

Plaintiff argues: (1) it does not seek recovery for purely economic loss; (2) the exception to *Moorman* set forth in *Ferentchak* should apply in this case; and (3) its claim is for negligent professional services and hence an exception to *Moorman* exists under the authority of *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.

Walther responds: (1) the loss here is purely economic; (2) this court should follow *Bates & Rogers* as a better-reasoned opinion; and (3) *Rozny* has no application to the facts here.

The *Moorman* decision is of sufficient notoriety as to need no extensive repetition here. It established the "economic loss doctrine" which holds that, in general, tort actions should be confined to situations involving physical harm or property damage, as distinguished from purely economic loss for which redress should be sought in a contract action. Tort law requires a manufacturer to produce a safe product, but it is not well suited in regulating other quality requirements. The court commented that a purchaser's disappointed expectations are better redressed in contract, saying:

> " '[T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.' " *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 85, 435 N.E.2d 443, 450 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1172-73).
>
> "Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence. *** The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450.

After *Moorman*, the supreme court extended the economic loss doctrine to bar recovery in tort for economic losses occasioned by latent building construction defects. In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, and *Foxcroft Townhome Owners Asso-*

*ciation v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125, plaintiffs who were subsequent purchasers of residential units brought tort actions against the builders of the units for construction defects. The only injuries alleged in either case were damages to the buildings themselves. In *Redarowicz,* the plaintiff's tort claims against a house builder were dismissed on the authority of *Moorman:*

"A disappointed consumer of a storage tank or a disgruntled purchaser of a certain house cannot assert that, due to inferior workmanship that led to eventual deterioration, he can recover under a negligence theory in tort. We find no sound reason to treat either of the aforementioned purchasers differently from one another." 92 Ill. 2d 171, 177, 441 N.E.2d 324, 327.

■ The first issue to be decided is whether, under the facts of the instant case, the plaintiff is seeking recovery for economic loss only. We think it is and that the *Moorman* bar applies.

None of the *Moorman* definitions of economic loss fit the instant case with precision. The *Moorman* court was dealing with products rather than with services, but we perceive no reason why the same rationale should not apply. Plaintiff makes no claim for personal injury or property damage; it seeks only recovery of the additional cost of redoing portions of the project; there is no allegation of a sudden calamitous event, only dissatisfaction with the quality of assistance received from Walther.

Plaintiff claims that this case is controlled by *Bi-Petro Refining Co. v. Hartness Painting Co.* (1983), 120 Ill. App. 3d 556, 458 N.E.2d 209. We disagree. In *Bi-Petro* a storage tank suddenly ruptured and the plaintiff brought both tort and contract claims. The appellate court held that the tort claim was not barred under *Moorman* since the damage resulted from a sudden violent occurrence. The differences between that case and the instant one are obvious. The fourth amended complaint makes no mention of a sudden, violent occurrence. Rather, if anything, there was a gradual deterioration on account of the poor quality of supervision.

Plaintiff further argues that even if the losses here are economic, an exception to *Moorman* set forth in *Ferentchak* should be followed by this court. Defendant, *contra,* maintains that if any exception is to apply, it should be that found in *Bates & Rogers.* Extended analysis of these cases is not necessary here, since we decline to follow either one.

In summary, *Ferentchak* held that *Moorman* should not be applied if to do so would deprive a plaintiff of his only cause of action against a particular defendant. Stated otherwise, *Moorman* may only be ap-

plied to bar a tort claim against a defendant if the plaintiff also has a contract/warranty claim against the same defendant.

*Bates & Rogers* held that *Moorman* should not be applied if to do so would leave a plaintiff wholly without a remedy. Stated otherwise, *Moorman* may be applied to deprive a plaintiff of his only cause of action against a particular defendant, so long as it leaves intact a claim against some defendant.

As applied to the instant case, *Ferentchak* would allow plaintiff to maintain its tort action against Walther because it has no contract/warranty action against Walther. Under *Bates & Rogers*, plaintiff's claim against Walther would be barred because it still has a claim against Ledbetter.

With all deference to our colleagues in the second and third appellate districts, we believe that both *Ferentchak* and *Bates & Rogers* are flawed decisions. They attempt to create exceptions to *Moorman* when the supreme court has never considered such exceptions.[1]

■ The basic rationale of *Moorman* is that defects of a qualitative nature which defeat commercial expectations should be remedied in contract, rather than tort, law. This is best illustrated by *Moorman's* adoption of the reasoning of the California Supreme Court in *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 18, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23:

> " '[The manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.' " *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 80-81, 435 NE.2d 443, 448.

The matter was well stated another way by Justice Simon in his special concurrence in *Moorman*:

---

[1]The supreme court did grant leave to appeal in *Ferentchak*, but did not decide the issue presented here. (*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822.) Leave to appeal has been granted in *Bates & Rogers* (No. 61386), but no opinion yet handed down.

"The central test is the relation of the malfunction and the consequent loss to what the product was supposed to accomplish. The product's function is the core of the commercial bargain, and any shortcomings should normally be dealt with by commercial law, unless there is some excellent reason for invoking the less flexible tort system. Hazards peripheral to the product's function, however, were not in the forefront of the minds of the contracting parties, and it is convenient to have tort rules about them. [Citation.]" 91 Ill. 2d 69, 96-97, 435 N.E.2d 443, 455-56 (Simon, J., specially concurring).

Doubtless, both the *Ferentchak* and the *Bates & Rogers* courts were charitably motivated in seeking to ameliorate some of the harsher consequences of the *Moorman* doctrine, but we find that action inappropriate, given the silence of the supreme court on the subject. *Moorman* itself provides for two exceptions: (1) actions for intentional misrepresentation, and (2) actions for negligent misrepresentation against a party in the business of supplying information for the guidance of others in their business transactions. (91 Ill. 2d 69, 88-89, 435 N.E.2d 433.) The *Ferentchak* and *Bates & Rogers* exceptions do not fall within either of these categories.

Plaintiff's final argument is that, assuming, *arguendo*, *Ferentchak* and *Bates & Rogers* do not apply, the second exception in *Moorman* itself, set forth above, does apply under the authority of *Moorman* and *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656. We do not agree.

■ Like *Moorman*, the *Rozny* decision is sufficiently well known so as to need no further explication here. It was cited in *Moorman* as the basis for the second exception. In *Rozny* the supreme court listed six factors relevant to a cause of action for negligent misrepresentation in supplying information for the guidance of others in their business transactions. Only the first of the six need concern us here, since it is dispositive of plaintiff's claim:

"(1) The express, unrestricted and wholly voluntary 'absolute guarantee for accuracy' appearing on the face of the inaccurate plat." 43 Ill. 2d 54, 67, 250 N.E.2d 656, 663.

In the instant case there is no allegation that Walther made an express, unrestricted and wholly voluntary absolute guaranty of accuracy of the information supplied to plaintiff. The omission is not to be taken lightly. In *Rozny* the supreme court stated that its decision was "based upon the express representation of accuracy made by the defendant and appearing on the face of the plat." 43 Ill. 2d 54, 60, 250 N.E.2d 656, 659.

Moreover, it is not at all clear from the fourth amended complaint that Walther is in the business of supplying information for the guidance of others in their business transactions. That complaint is vague about the nature of the Walther company and its precise role in the project here. The requirement that the defendant be in the business of supplying information has been rigidly construed. In *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 440 N.E.2d 282, the plaintiff went to the defendant IBM for a recommendation on a computer system. The latter recommended a particular kind of hardware and software. Both turned out to be unfit for plaintiff's uses. Plaintiff sued for economic loss on the basis of *Rozny*, but the appellate court held that IBM was not in the business of supplying information.

To summarize: plaintiff seeks recovery for economic loss only; we decline to recognize any exceptions to *Moorman* except the two contained within the opinion itself; and we hold that neither of them apply to the instant case.

Therefore, the order of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.