**William R. ROSE, Plaintiff,**

v.

**Greg FRANCHETTI, Individually and doing business as Fall River Airways, Defendant.**

**No. 88 C 10036.**

United States District Court, N.D. Illinois, E.D.

May 16, 1989.

---

Warren R. Fuller, Chicago, Ill., for plaintiff.

Greg Franchetti, Lincoln, R.I., pro se.

Arnold H. Landis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

**BRIAN BARNETT DUFF**, District Judge.

Plaintiff William Rose has sued defendant Greg Franchetti for breach of contract and fraud arising out of the plaintiff's purchase of an airplane from the defendant. Diversity jurisdiction exists, but the defendant has moved to dismiss pursuant to Rule 12(b)(2) on the grounds that the court lacks personal jurisdiction over him, and in the alternative, requests transfer of venue pursuant to 28 U.S.C. § 1404(a). As set forth below, the motion will be denied.

## FACTS

The facts relevant to this motion are not in dispute. The plaintiff is a citizen of Illinois. The defendant is a citizen of Rhode Island who does business out of Massachusetts. In June, 1988, the plaintiff was reading a magazine of general circulation when he came across the defendant's advertisement for the sale of an airplane. He instructed his employee, Andrew Spak, to contact the defendant to inquire about the aircraft. Spak did so.

Over the next few weeks, Spak and the defendant exchanged phone calls on a number of occasions to discuss the plane.[1] During these conversations, the defendant represented that the plane was in good condition, that he had inspected it, that it needed only minor repairs, and that he had engaged Federal Aeronautics Administration ("FAA") certified mechanics to do the repairs in accordance with FAA practices.

The plaintiff thereafter sent agents to Massachusetts to see the plane. After inspecting the plane's records, the agents purchased the plane and flew it back to Illinois.

Spak, a certified FAA mechanic, then disassembled the plane for inspection. He discovered numerous repairs which had not been logged in the aircraft's records and which did not comply with FAA practices. The condition of the aircraft rendered it virtually valueless.

The plaintiff subsequently filed this lawsuit alleging breach of contract and intentional misrepresentation. The defendant has moved to dismiss the complaint for lack of personal jurisdiction, or in the alternative, to transfer this case to Massachusetts.

## DISCUSSION

*Personal Jurisdiction*

In order to enter a binding judgment, a court must have personal jurisdiction over the defendant. A court acquires such jurisdiction when the plaintiff properly serves the defendant with process pursuant to a statute or rule, and the service does not violate due process. *Omni Capital International v. Rudolf Wolff & Co., Ltd.*, 484

---

1. Although the plaintiff asserts in his briefs that the defendant called Spak on at least one occasion, Spak's affidavit is ambiguous on this score inasmuch as it states only that he "had a series of conversations with [the defendant] regarding my employer's purchase of the subject aircraft." Aff. ¶ 2. Because the defendant has presented no evidence to clarify this ambiguity, however, the court must assume for the purposes of this motion that the defendant initiated at least some of these phone calls. *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 343 n. 4 (C.D.Ill.1984); *see J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir. 1987).

U.S. 97, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987).

In federal court, Fed.R.Civ.P. 4 governs service of process. Rules 4(c)-(e) prescribe the manner in which process may be served. Rule 4(f) describes where it may be served:

All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

Where, as here, the plaintiff is suing a defendant located "beyond the territorial limits of the state," *id.*, Rule 4(f) refers to Rule 4(e):

*(e) Summons: Service Upon Party Not Inhabitant of or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or if thre is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides ... for service of a summons, or of notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

Thus, the first sentence of this rule applies when a federal statute authorizes out-of-state service of process. The second sentence governs in the absence of such a federal statute. In this case, no such statute exists, so this court may obtain personal jurisdiction over the defendant only "under the circumstances and in the manner prescribed in [an Illinois] statute or rule." Fed.R.Civ.P. 4(e).

Neither party has informed the court as to the manner of service plaintiff employed in serving the defendant. Since the defendant has not objected to it, this court assumes that the manner of service was proper. *See* Fed.R.Civ.P. 12(b)(4), (5).

The only question remaining then, is whether service was authorized "under the circumstances"—that is, whether Illinois law permits service on this out-of-state defendant. The Illinois long-arm statute, Ill. Rev.Stat.1987 ch. 110, ¶ 2–209(a) ("¶ 2–209(a)"), provides:

Any person, whether or not a citizen or a resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within the State;

(2) The commission of a tortious act within this State....

Thus, in order to sue the defendant here, the plaintiff must establish that the defendant either transacted business within Illinois or committed a tort within Illinois, and that the causes of action arose from these acts.[2]

---

**2.** In addition to the long-arm statute, Illinois courts long have recognized the "doing business" doctrine. This doctrine, the vestige of an era in which a state could asert jurisdiction only over those present within its borders (*see Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877)), allows the court to assume jurisdiction over defendants with substantial business in Illinois, on the fiction that this business renders them "constructively present in this State." *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981); *Afirm, Inc. v. Frazee Paint & Wallcovering Co.*,

624 F.Supp. 973, 978 (N.D.Ill.1985). When proceeding under this doctrine, a plaintiff need not establish that his cause of action arose from the defendant's contacts with Illinois. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d at 200, 57 Ill.Dec. 730, 429 N.E.2d 847; *see also Helicopteros, Nacionales de Columbia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Since the defendant's only contacts with Illinois were his advertisements and his phone calls regarding the sale of the airplane, the plaintiff wisely has not relied on this doctrine here. *See Loggans v. Jewish Community*

■ The defendant first contends jurisdiction does not lie under ¶ 2–209(a)(1) because advertising in a newspaper that circulates to Illinois and making phone calls to a potential purchaser in Illinois do not constitute the transaction of business within the state. The plaintiff does not dispute this argument. Instead, he argues that the defendant committed a tortious act in Illinois and is therefore amenable to jurisdiction under ¶ 2–209(a)(2). Before turning to this argument, it is worth examining why the plaintiff chose not to rely on ¶ 2–209(a)(1).

In *Wiles v. Morita Iron Works Co.*, 152 Ill.App.3d 782, 105 Ill.Dec. 657, 504 N.E.2d 942 (1987), *rev'd on other grounds*, 125 Ill.2d 144, 125 Ill.Dec. 812, 530 N.E.2d 1382 (1988), the court held that personal jurisdiction existed under ¶ 2–209(a)(1) over a foreign defendant for claims arising out of a single transaction which occurred outside the state because the defendant "sold its products to a corporation that used the products in Illinois, the transaction was a money-making event for defendant, and plaintiff's injury was a direct result of the transaction." *Id.*, 152 Ill.App.3d at 789, 105 Ill.Dec. 657, 504 N.E.2d 942. This holding certainly suggests that the defendant here, who sold a plane for profit in Massachusetts knowing it would be returned to Illinois, falls within the reach of ¶ 2–209(a)(1).

To be sure, the defendant could have argued that *Wiles* is distinguishable on the grounds that the injury there occurred inside Illinois whereas the injury here arguably occurred in Massachusetts, where the defective plane was purchased. But that distinction does not explain why the *plaintiff* failed to cite the case, for he has predicated most of his arguments on the theory that his injury occurred when his employee inspected the plane in Illinois and discovered the defects.

The plaintiff, however, may have had another reason for not relying on *Wiles* as a basis for asserting jurisdiction under ¶ 2–209(a)(1): *Wiles*, or at least that portion of it dealing with this subsection, is probably wrong.[3] *Wiles* relied heavily on *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979). *Connelly* held that the analysis under ¶ 2–209(a)(1) coincides with "economic activity" analysis of the California and United States Supreme Courts, so that an out-of-state manufacturer submits himself to jurisdiction within the state "whenever the state generates gross income for the manufacturer and is not so fortuitous or unforseeable as to negative the existence of an intent on the manufacturer's part to bring about that result." *Buckeye Boiler Co. v. Superior Court*, 71 Cal.2d 893, 902, 80 Cal.Rptr. 113, 458 P.2d 57 (1969) (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

*Connelly*, however, come at a time when the Illinois Supreme Court still viewed the Illinois long-arm statute as extending as far as federal due process would allow. *See Connelly*, 75 Ill.2d at 402, 27 Ill.Dec. 343, 389 N.E.2d 155. *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), subsequently rejected this premise, holding that ¶ 2–209 is not coterminous with the due process clause, and the Seventh Circuit has read *Green* as undermining the reasoning of cases decided before it. *See Small v. Sheba Investors, Inc.*, 811 F.2d 1163, 1164–65 (7th Cir.1987).[4] Thus, *Connelly* proba-

---

Center, 113 Ill.App.3d 549, 556, 69 Ill.Dec. 484, 447 N.E.2d 919 (1983).

3. Of course, inasmuch as the Illinois Supreme Court reversed the appellate court's ruling in *Wiles*, the latter's ruling was definitely wrong. But because the high court chose to decide the case on the grounds that, even if the long-arm statute permitted jurisdiction, federal due process did not, it did not resolve whether the appellate court had reached the correct result under the Illinois statute. *Wiles v. Morita Iron*

Works Co., 125 Ill.2d at 149, 125 Ill.Dec. 812, 530 N.E.2d 1382.

4. Courts remain uncertain as the precedential value of pre-*Green* case law. *Green* did not say that the long-arm statute is narrower than the Due Process Clause; it stated only that, because the Illinois statute sets forth particular acts giving rise to jurisdiction, its meaning cannot ebb and flow with the United States Supreme Court's interpretation of the Due Process Clause. 86 Ill.2d at 436, 56 Ill.Dec. 657, 427 N.E.2d 1203.

bly is no longer good law on the reach of ¶ 2–209(a)(1); if it is not, then *Wiles* is not either.

*Gordon v. Tow*, 148 Ill.App.3d 275, 101 Ill.Dec. 394, 498 N.E.2d 718 (1986), by contrast, recognized that *Green* changed the landscape for ¶ 2–209 analysis, and set forth a multifactor test for determining when an out-of-state defendant transacts business within Illinois for the purposes of ¶ 2–209(a)(1):

> The determination of whether defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors: who initiated the transaction; where the contract was entered into; and where the performance of the contract was to take place. While none of these factors [is] controlling, each of them is significant.

*Id.* 148 Ill.App.3d at 280, 101 Ill.Dec. 394, 498 N.E.2d 718.

In *Gordon*, an Illinois plaintiff purchased shares in a Rhode Island limited partnership from a defendant located in Rhode Island. The plaintiff had met with the defendant in Rhode Island before the purchase, and had then corresponded with him in letters and telephone calls between Rhode Island and Illinois. The plaintiff finally sent the defendant a signed subscription agreement for the purchase of an interest in the limited partnership, which the defendant executed in Rhode Island. When the plaintiff sued for securities and common law fraud, the court held that the defendant could not be sued in Illinois. *Id.* at 283, 101 Ill.Dec. 394, 498 N.E.2d 718.

For relevant purposes, *Gordon* is indistinguishable from this case. The contract for the purchase of the airplane was executed in Massachusetts, and was to be performed in Massachusetts. Further, although the defendant advertised in a magazine with Illinois circulation, Illinois courts do not consider such solicitation to be an initiation of contacts for jurisdictional purposes. *See Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 970, 304 N.E.2d 27 (1973). Instead, plaintiff initiated the contacts when he responded to the advertisement. Thus, under the multifactor analysis set forth in *Gordon* (and cited with approval in *Small*, 811 F.2d at 1165–66), this court has no basis for exercising jurisdiction over the defendant pursuant to ¶ 2–209(a)(1). *See also Maurice Sternberg, Inc. v. James*, 577 F.Supp. 882, 885 (N.D.Ill.1984) ("[I]nterstate telephone and mail communications to an Illinois plaintiff are not sufficient to constitute the transaction of business required by the Illinois long-arm statute ... regardless of which party initiates the calls, correspondence or the transaction itself.") (citations omitted).

Of course, the above discussion sought only to explain why the plaintiff did not rely on ¶ 2–209(a)(1). Even had this court determined that jurisdiction would lie under this subsection, the court would still have refused to exercise it given the plaintiff's waiver of this position. But now we know the reason for the waiver.

■ This leaves ¶ 2–209(a)(2). The defendant begins his attack by arguing that the plaintiff cannot rely on this subsection because he has not stated a claim for fraud, and therefore cannot show the commission of a tortious act at all, no less in Illinois. The defendant predicates this argument on the economic loss doctrine first enunciated by the Illinois Supreme Court in *Moorman v. National Tank Company*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Under this doctrine, a plaintiff suing for purely economic losses generally

---

Some courts have construed this admonition as suggesting that all pre-*Green* cases are suspect. *E.g., Small v. Sheba Investors, Inc.*, 811 F.2d at 1164–65. Others have opined that it means only that the statute's scope should not expand further than where it was when *Green* issued, and thus that pre-*Green* cases remain authoritative. *See, e.g., Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 403 (7th Cir.1986); *Afirm, Inc. v. Fra-* *zee Paint & Wallcovering Co.*, 624 F.Supp. 973, 977 n. 5 (N.D.Ill.1985). This court takes a different approach. Those pre-*Green* cases which tracked their analyses to the specific wording of the statute remain valid after *Green*. But in those cases where the courts merely stated that the Illinois statute goes as far as due process will allow the precedential value today is minimal.

must ground his claims in contract rather than tort. *Id.* at 88, 61 Ill.Dec. 746, 435 N.E.2d 443.

██ Ordinarily, attacks on the merits of a plaintiff's case should come only after jurisdictional issues have been resolved. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 778, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984). But because the Illinois long-arm statute specifically makes the commission of a tort an independent basis for jurisdiction, Illinois courts require the plaintiff to state a viable claim in tort before relying on ¶ 2–209(a)(2).[5] *See Wimmer v. Koenigseder,* 108 Ill.2d 435, 92 Ill. Dec. 233, 484 N.E.2d 1088 (1985); *Unarco Industries v. Frederick Manufacturing Co.,* 109 Ill.App.3d 189, 64 Ill.Dec. 808, 440 N.E.2d 360 (1982); *City of E. Moline v. Bracke, Hayes & Miller,* 133 Ill.App.3d 136, 88 Ill.Dec. 322, 478 N.E.2d 637 (1985).

██ Nevertheless, the defendant's efforts to escape jurisdiction on this basis fail, and fail miserably. In *Moorman,* and in subsequent cases applying it, the Illinois courts steadfastly have held that economic loss is recoverable in tort "where one intentionally makes false representations." *Id.* 91 Ill.2d at 88–89, 61 Ill.Dec. 746, 435 N.E. 2d 443; *Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 133 Ill.App.3d 844, 849, 88 Ill.Dec. 863, 479 N.E.2d 476 (1985); *see also Swaw v. Ortell,* 137 Ill.App.3d 60, 73–74, 92 Ill.Dec. 49, 484 N.E.2d 780 (1985).[6] The fraud claim here arises out of the defendant's alleged misrepresentations regarding the condition of the airplane, and thus falls outside the *Moorman* doctrine.

The defendant next argues that his alleged misrepresentations to the plaintiff's agents over the phone and in Massachusetts do not amount to the commission of a tort within Illinois. He suggests instead that any wrongdoing occurred in Massachusetts, where the purchase took place.

██ The fact that the parties contracted in Massachusetts, however, is not determinative under ¶ 2–209(a)(2). A single tortious act can give rise to jurisdiction under the Illinois long-arm statute even if most of the defendant's activities occur elsewhere. *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957); *see Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 549–50 (7th Cir.1988). A single telephone call into Illinois thus will give rise to Illinois jurisdiction so long as the call constitutes the commission of a tortious act within Illinois.[7] *See In Re Brainerd v. Balish,* 164 Ill.App.3d 836, 115 Ill.Dec. 792, 518 N.E.2d 317 (1987); *Marriage of Brown,* 154 Ill.App.3d 179, 106 Ill.Dec. 927, 506 N.E.2d 727 (1987); *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 347 (N.D.Ill.1984).

██ To show the commission of a tortious act within Illinois, the plaintiff first must establish that a tort occurred in Illinois. The general rule is that where tortious acts are committed over the telephone, the situs of the tort is the place where the phone call was received. *Harvey v. Price,* 603 F.Supp. 1205, 1209 (S.D. Ill.1985). Since the plaintiff received the fraudulent statements while he was in Illinois, it would certainly appear that a tort occurred within Illinois for the purposes of ¶ 2–209(a)(2).

5. Both parties implicitly acquiesce in Illinois law governing the fraud claim. That conclusion appears questionable in light of the substantial contacts between Massachusetts and the circumstances here, but because "litigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case, within broad limits not exceeded here," *City of Clinton v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987), this court will not take issue with their choice.

6. In *Maurice Sternberg, Inc. v. James,* 577 F.Supp. 882 (N.D.Ill.1984), Judge Grady held that the plaintiff could not assert jurisdiction under ¶ 2–209(a)(2) in a case seeking solely economic losses under theories of breach of con-

tract and intentional misrepresentation. *Id.* at 885 n. 3. This court cannot distinguish that case, but in the absence of any Illinois case law supporting that ruling, this court will not follow it.

7. Although a single act can also give rise to jurisdiction under ¶ 2–209(a)(1), a single phone call ordinarily will not do the trick under this subsection because, as set forth above, the transaction of business requires a multifactor analysis into the nature of the defendant's contacts with Illinois. *See Woodfield Ford, Inc. v. Akins Ford Corp.,* 77 Ill.App.3d 343, 349–50, 32 Ill.Dec. 750, 395 N.E.2d 1131 (1979); *Artoe v. Mann,* 36 Ill.App.3d 204, 343 N.E.2d 647 (1976).

In *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), however, the Illinois Supreme Court rejected the notion that, by using the phrase "tortious act" rather than "tort", the Illinois legislature was focusing on "the act or conduct, separate and apart from any consequences thereof." *Gray*, 22 Ill.2d at 436, 176 N.E.2d 761; *see Heil v. Morrison Knudsen Corp.*, 863 F.2d at 550 ("[A] tort is not wrongful conduct in the air; the arrow must hit its mark."). The Court held that, for the purposes of the Illinois long-arm statute, the location of the tort "is where the last event takes place which is necessary to render the actor liable." *Gray*, 22 Ill.2d at 435, 176 N.E.2d 761 (citing Restatement, Conflict of Laws, § 377); *accord Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981);[8] *Yates v. Muir*, 112 Ill.2d 205, 97 Ill.Dec. 394, 492 N.E.2d 1267 (1986). This suggests that the plaintiff here must show not only that the defendant made misrepresentations in calls to Illinois, but also that these misrepresentations caused an injury in Illinois.[9]

▮ To do so, the plaintiff notes that he first discovered the plane's defects when his employee inspected it in Illinois, and argues that his injuries thus occurred in Illinois. Not so. The plaintiff may have first learned of his injury when he discovered the defects, but the last act necessary to render the defendant liable for the plane's defects occurred when the plaintiff's agents paid for the plane and took possession of it—in Massachusetts. *See Yates v. Muir*, 112 Ill.2d 205, 97 Ill.Dec. 394, 492 N.E.2d 1267 (1986).

Now, the plaintiff could have countered with a reference to *Gray*, where the court analogized jurisdictional analysis to statute of limitations problems and suggested that a tort occurs at the same time that the

statute of limitation begins to run. 22 Ill. 2d at 435, 176 N.E.2d 761. Since the defendant's alleged efforts to hide the plane's defects clearly would have tolled the running of the limitations period until the plaintiff reasonably could have discovered them, the plaintiff could have argued that the tort accrued at this time, with the plane in Illinois.

But the plaintiff has not so argued, and this court finds it unnecessary to delve further into this somewhat abstract inquiry. While the plaintiff suffered his most severe damages when he purchased the plane, his first injury accrued when he relied on the defendant's misrepresentations and incurred the expense of sending employees to Massachusetts to inspect the aircraft. These acts alone thus gave rise to an action for fraud. Since they occurred in Illinois, the tort occurred here.

Having established that a tort occurred in Illinois, the language of the statute appears to be satisfied. But because the "last event" approach to the situs of a tort extends the reach of the Illinois long-arm statute quite far, and indeed farther even than the due process clause would allow, Illinois courts have engrafted the additional requirement that, in order to have committed a tortious act within Illinois, the defendant must have purposefully engaged in some relationship with Illinois.

Before examining just what that relationship must be, it is worth noting that this approach arose at a time when the Illinois courts viewed the long-arm statute as coextensive with the due process clause. Since the due process clause imposed such a limit on long-arm statutes, *see International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Illinois courts had to impose the same limit on their statute to keep the two consistent.

---

**8.** In *Green,* the Court refused to extend ¶ 2–209(a)(2) to reach torts committed in another state which have economic consequences in Illinois, 86 Ill.2d at 438, 56 Ill.Dec. 657, 427 N.E.2d 1203, but reaffirmed that the "last event" analysis set forth in *Gray* remains good law. *Id.,* 86 Ill.2d at 437–38, 56 Ill.Dec. 657, 427 N.E.2d 1203.

**9.** Of course, were plaintiff able to proceed under the transaction of business subsection, it would not matter where the tort occurred so long as the tort arose out of the transacted business. *See Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 549 (7th Cir.1988); *Saylor v. Dyniewski,* 836 F.2d 341, 343 (7th Cir.1988).

With *Green*'s decision to sever the long-arm statute from the due process clause, Illinois courts may begin to adhere more closely to the language of the statute in determining whether it reaches the defendant, and then undertake due process analysis as a separate inquiry before exercising jurisdiction. *See Wiles v. Morita Iron Works Co.*, 125 Ill.2d 144, 125 Ill.Dec. 812, 530 N.E.2d 1382 (1988) (holding that due process precluded exercising jurisdiction while expressly declining to decide whether the long-arm statute reached the defendant). Until the Illinois courts say as much, however, this court must continue to view the long-arm statute as including an additional relationship requirement.

In *Zukerman*, Judge Shadur noted that in assessing whether telephone calls from an out-of-state defendant into Illinois constitute the commission of a tortious act within Illinois, Illinois courts have looked to whether the defendant "inten[ded] to affect Illinois interests." 594 F.Supp. at 346–47. The defendant objects to this characterization, urging instead that the inquiry is whether the defendant "invoked the benefits and protections of the law of the forum." *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d at 440, 176 N.E.2d 761.

In fact, Illinois courts have used both phraseologies. This split reflects the United States Supreme Court's divergent approaches to jurisdictional analysis under the due process clause, at times concentrating on the state's regulatory interests in determining the constitutionally permissible reach of long-arm statutes, and at other times stating that amenability to suit turns on the defendant's consensual relationship with the forum state. *See generally* Stein, Styles of Argument and Interstate Federalism in the Law of Pesonal Jurisdiction, 65 Tex.L.Rev. 689 (1987).

The proper inquiry depends on the type of conduct involved. Jurisdictional analysis focuses on the defendant's intentional acts vis-a-vis the forum state. Where the alleged wrongdoing is unintentional—i.e., negligence—the defendant has not intended to do harm in the forum state, so jurisdiction turns on his consensual relationship with the forum state—i.e., whether he invoked the benefits and protections of its laws. *Gray*, 22 Ill.2d at 440, 176 N.E.2d 761. On the other hand, where the defendant allegedly has committed an intentional wrong in the forum state, "it is awkward to refer to a defendant's alleged deliberate violation of Illinois law as 'invoking the benefits and protections of Illinois law.'" *Zukerman*, 594 F.Supp. at 346 n. 8. It is also unnecessary. So long as the defendant intended to affect Illinois interests, his conduct is of the sort the Illinois long-arm statute seeks to reach. *See Brainerd v. Balish*, 164 Ill.App.3d at 841, 115 Ill.Dec. 792, 518 N.E.2d 317.

In this case, the defendant clearly intended to affect Illinois interest. He advertised in Illinois, made phone calls to an Illinois resident, and then sold a plane knowing it was destined for Illinois. Accordingly, if the defendant committed a tortious act, and for now the court must assume that he did, then he committed it within Illinois for the purposes of the long-arm statute. Because all of the plaintiff's claims lie in the wake of this tortious conduct, the long-arm statute authorizes jurisdiction over the defendant for each count in the complaint. *See Loggans v. Jewish Community Center*, 113 Ill.App.3d 549, 557, 69 Ill.Dec. 484, 447 N.E.2d 919 (1983); ¶ 2–209(c) ("Only causes of action arising from acts enumerated [in ¶ 2–209(a) ] may be asserted against a defendant in which jurisdiction over him or her is based upon this section.").

That the Illinois long-arm statute reaches the defendant does not quite end the jurisdictional inquiry. The court must also ensure that asserting jurisdiction comports with due process. The Supreme Court as well as the Seventh Circuit consistently have looked to the Due Process Clause of the Fourteenth Amendment as governing in diversity cases. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Mason v. F. Lli Liugi & Franco Dal Maschio*, 832 F.2d 383 (7th Cir.1987); *see generally* 4 Wright & Miller, Federal Practice & Procedure, § 1067.1 at 505 (1987). Just why this

is so, however, is not entirely clear, and is rarely discussed.

The Fourteenth Amendment sets limits on state power. The Fifth Amendment curbs federal power. *See Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting) ("[D]ue process requires only certain minimum contacts between the defendant and the sovereign that has created the court."). So why does the Fourteenth Amendment ever apply to a federal court's power to exercise jurisdiction?

Justice Powell has opined that the answer lies in the Rules of Decisions Act, 28 U.S.C. § 1652. *See Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 711–13, 102 S.Ct. 2099, 2108–09, 72 L.Ed.2d 492 (1982) (Powell, J., concurring). But this will not do. The Rules of Decisions Act requires federal courts to apply state substantive law in diversity cases, *see Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but the Fourteenth Amendment is not state substantive law, it is federal Constitutional law. Moreover, personal jurisdiction is distinct from the underlying cause of action, and is more procedural than substantive: Were it not, then the Federal Interpleader Statute, 28 U.S.C. § 2361, which authorizes nationwide service of process in diversity cases (*see Indianapolis Colts v. Mayor of Baltimore,* 733 F.2d 484, 487 (7th Cir. 1984)), would be on shaky constitutional ground, but it is not. *See Arrowsmith v. United Press International,* 320 F.2d 219, 224–27 (2d Cir.1963) (Congress has the authority to enact nationwide service of process rules to govern diversity cases).

Some courts have stated that the answer lies in the Federal Rules: Since Rule 4(e) states that, in the absence of a federal statute, a federal court may obtain extraterritorial jurisdiction only "under the circumstances prescribed in [a state] statute or rule," these courts reason that any con-

stitutional limits on state long-arm statutes must apply when a federal court employs the statute.[10] *E.g., Max Daetwyler v. R. Meyer,* 762 F.2d 290, 296 & 295–96 n. 5 (3d Cir.1985) (in the absence of congressional authorization of nationwide service, Fourteenth Amendment applies in diversity as well as federal question cases). Yet, Rule 4(e) does not say that constitutional limits on state power must be respected by federal courts. It provides only that, in the absence of a federal service of process statute, the federal court may obtain jurisdiction under the circumstances *prescribed* by state statute. If the state statute prescribes a jurisdictional reach beyond that allowed by the Fourteenth Amendment, a literal reading of the rule does not mandate that the federal court abide by the limitations of this amendment. *See* Welkowitz, Beyond *Burger King:* The Federal Interest in Personal Jurisdiction, 56 Ford.L.Rev. 1, 21 n. 36 (1987).

The best reason, then, for utilizing Fourteenth Amendment scrutiny, at least in diversity cases, is that this seems to be the intent of the drafters of Rule 4(e), *see* Fed.R.Civ.P. 4(e) (Advisory Committee Notes to 1963 Amendments); *but see Welkowitz, supra,* 56 Ford.L.Rev. at 19 n. 123 (discussing the advisory committee notes), and effectuates the interests of intrastate uniformity underlying *Erie:* Were federal courts to employ a different due process standard in diversity cases than state courts must, plaintiffs would have an incentive to shop for a federal forum, a result not intended by the drafters of Rule 4(e), and, in any case, not sanctioned by the Supreme Court.

 Under the Fourteenth Amendment Due Process Clause, a court may not assert jurisdiction over a defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

---

**10.** When service is made pursuant to a federal nationwide service of process statute, courts generally agree that Fifth Amendment due process applies, and that the relevant inquiry is the extent of the defendant's contacts with the Unit-

ed States. *In re Chase & Sanborn,* 835 F.2d 1341, 1344–45 n. 8 (11th Cir.1988); *see Lisak v. Mercantile Bankcorp., Inc.,* 834 F.2d 668 (7th Cir.1987).

justice'" (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The defendant here cannot deny that he has minimum contacts with Illinois. He advertised in Illinois, spoke directly with the plaintiff while the latter was in Illinois, and then sold an airplane to the plaintiff's employees knowing that they would return with the plane to Illinois. This intentional conduct more than suffices under any of the theories of minimum contacts elaborated by the Supreme Court in recent years. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion) (the defendant must have purposefully availed himself of the forum's market); *id.,* 107 S.Ct. at 1035–38 (Brennan, J., concurring) (the defendant need only have known that his product would land in the forum's market).

Minimum contacts, however, is not enough. Although their existence makes it more likely that exercising jurisdiction will be appropriate, *see id.* at 1034 (plurality opinion); *Burger King Corp. v. Rudzewizc,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), the court still must ensure that haling the defendant into the forum would not be "unreasonable and unfair," *Asahi,* 107 S.Ct. at 1038 (Stevens, J., concurring); *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85. In making this determination:

> A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi,* 107 S.Ct. at 1034 (plurality opinion) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980))

The only factor favoring the defendant is the first: the substantial burden he will face in having to litigate in Illinois. Yet, this burden is no greater than the burden the plaintiff would endure were he forced to go to Massachusetts to obtain relief. And Illinois has a substantial interest in protecting its citizens from the sort of interstate fraud alleged here. *Cf. Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). These factors, when considered in light of the defendant's intentional decision to engage in business with an Illinois citizen (in Illinois), leave no question that the exercise of jurisdiction over him would be fair and reasonable. *See Burger King Corp. v. Rudzewizc,* 471 U.S. at 477, 105 S.Ct. at 2184 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction will be denied.

*Venue*

██ The defendant requests a transfer of venue to the United States District Court in Massachusetts pursuant to 28 U.S.C. § 1404(a).[11] In order to obtain transfer under this provision, the defendant must establish (1) that venue is proper in the transferor forum, (2) that venue is proper in the transferee forum, and (3) that the transfer is "for the convenience of the parties and the witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Countryman v. Stein, Roe & Farnham,* 681 F.Supp. 479, 481 (N.D.Ill.1987).

The parties do not dispute that venue is proper here, and would be proper in Massachusetts. Thus, the only issue left is the third. The statute instructs the court to take account of three factors: the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d

---

11. Section 1404(a) provides that:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

217, 221 (7th Cir.1986). A fourth factor is the plaintiff's choice of forum (which usually is, but may not be, the most convenient one for him), *Fossett Corp. v. Gearhart,* 694 F.Supp. 1325 (N.D.Ill.1988); *see Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955), but courts sometimes incorporate this factor into the statute's three-pronged standard by requiring the movant to show "a clear balance of inconvenience" favoring transfer. *Waites v. First Energy Leasing Corp.,* 605 F.Supp. 219, 221 (N.D.Ill.1985); *Coffey v. Van Dorn Iron Works,* 796 F.2d at 220 ("clearly more convenient").

With respect to the convenience of the parties, the defendant cannot do so. Although the defendant will be inconvenienced if he must litigate here, he has provided no evidence suggesting that the plaintiff will be any less inconvenienced if he must litigate in Massachusetts. Thus, this factor comes down even. C. Wright & A. Miller, Federal Practice & Procedure, § 3848 at 246 (1976) (transfer improper if it would merely "shift the inconvenience from one party to the other").

As for the convenience of the witnesses, the defendant says that his witnesses will be more severely inconvenienced if the case goes forward here than will be the plaintiff's witnesses if the litigation moves to Massachusetts. He also suggests that whereas the plaintiff's witnesses all work for the plaintiff and therefore will voluntarily appear, the defendant's witnesses do not work for the defendant, will have to be subpoenaed for testimony, and may be unwilling to appear in Illinois for trial.

This argument unquestionably is the defendant's strongest one favoring transfer. The convenience of witnesses is often viewed as the most important factor in the transfer balance, *see* C. Wright & A. Miller, Federal Practice & Procedure, § 3851 at 264 (1976), and is all the more so when the convenience of the parties is a wash. The defendant, however, has made it difficult for this court to gauge just how much weight this factor merits.

The defendant states in an affidavit that he intends to call certain (unspecified) individuals residing in the Massachusetts area as witnesses to testify about the condition of the plane. He indicates that these witnesses will assist him in showing that the defects in the plane were obvious to anyone experienced in aircraft engines. Yet, he does not spell out why this testimony will be critical for his case. As far as this court can tell, the plaintiff's case rests on the defendant's alleged misrepresentations regarding the condition of the aircraft vis-a-vis its actual condition. The defendant's own testimony about what he said thus will be his most important evidence.

Of course, the defendant could build a defense around the obviousness of the defects, but if this is his approach, he will need far more than the testimony of a few individuals who knew of them: He will need the testimony of experts regarding the condition of the plane. The plane, however, is right here in Illinois, and according to the plaintiff, immobile at that, so if the Massachusetts witnesses tilt the scale towards transfer, their weight is offset, at least in part, by the location of the aircraft. Without the defendant's assistance in elucidating who his witnesses are, and why they are important, this factor weighs, if at all, only marginally in the defendant's favor. *See General Portland Cement Co. v. Perry,* 204 F.2d 316, 320 (7th Cir.1953); C. Wright & A. Miller, Federal Practice & Procedure, § 3851 at 270–71 (1976).

The final factor is the "interest of justice," a broad category relating to the "efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey v. Van Dorn Iron Works,* 796 F.2d at 221. Encompassed within this category are the relative speed with which the case is likely to get to trial, the presence of related litigation in a particular forum, and in diversity cases, the advantage of having federal judges most familiar with the applicable state law try the case. *Id.; see generally* C. Wright & A. Miller, Federal Practice & Procedure, § 3854 (1976).

This court does not know the condition of the Massachusetts District Court docket, but things here are just fine; the court will be ready for trial when the parties are.

And, as far as the court is aware, there is no related litigation in either district. As for the final item, the defendant contends it weighs in his favor because Massachusetts contract law will apply to this case, and a federal court sitting there will have a better feel for that law; yet he ignores one crucial point. Under *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the transferee court must apply state law in the exact manner in which the transferor court would have. *Id.* at 639, 84 S.Ct. at 820. Thus, the transferee court must look to the choice of law rules of the transferor's state to determine the applicable law.

Here, the defendant appears correct that, under Illinois conflicts of law rules, Massachusetts law would govern the contract claim. This fact favors transfer, but only slightly. After all, contracts are contracts; it seems extremely unlikely that the Massachusetts federal court will have any noticeable advantage over this court in applying Massachusetts law.

More important, however, is that any such advantage would be more than offset by the legal issues surrounding the fraud claim. The defendant confidently has asserted that this claim poses no problem because it will be dismissed under the Illinois economic loss doctrine; yet, as discussed earlier, he is wrong. Whether the defendant's argument on this score constitutes a stipulation that Illinois law should govern the fraud claim presents an interesting question, *see ante* at p. 1209 n. 5, but one this court need not resolve now. For even if the defendant has not so stipulated, Illinois principles of conflicts of law will determine which substantive law applies. This court, sitting in Illinois, is in a far better position to apply Illinois conflicts law than would be a Massachusetts federal court.

In sum, then, the "convenience of the parties" factor favors neither side, the "convenience of witnesses" factor marginally supports the defendant, and the "interest of justice" factor marginally supports the plaintiff. Thus, whether the plaintiff's choice of forum is considered as a fourth factor, or instead is viewed as imposing a heavier burden on the defendant in seeking transfer, the motion to transfer cannot prevail.

### CONCLUSION

The defendant's motion to dismiss or transfer is denied.