(No. 65015.—

FLOYD WILES, Appellee, v. MORITA IRON WORKS COMPANY, LTD., Appellant.

*Opinion filed September 29, 1988.—Rehearing denied December 5, 1988.*

STAMOS, J., took no part.

Patterson Carl Meuth and Andrew R. Fogle, of Basford, Fogle & Meuth, of Libertyville, for appellant.

Eugene I. Pavalon, of Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago (Gary K. Laatsch and Allen I. Tish, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

This appeal arises out of an action grounded in strict liability and negligence brought in the circuit court of Cook County. The plaintiff, Floyd Wiles, brought the action against the defendant, Morita Iron Works Company, Ltd. (hereinafter MIW), a Japanese corporation not licensed to do business in Illinois. The defendant filed a special and limited appearance and a motion to dismiss, challenging the *in personam* jurisdiction of the court, pursuant to the Illinois long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209). The motion was supported by the affidavit of Motoo Morita, the defendant's president. The trial court quashed the service of process on the defendant and dismissed the defendant from this action. The appellate court reversed the trial court's order (152 Ill. App. 3d 782), holding that the defendant is properly subject to *in personam* jurisdiction in Illinois. We granted the defendant's petition for leave to appeal under Rule 315 (107 Ill. 2d R. 315).

The facts relevant to this appeal are as follows. The plaintiff's employer, Astro Packaging Company (hereinafter Astro), is a corporation which operates plants in Hawthorne, New Jersey, and Alsip, Illinois. Astro purchased four "air cell former" machines from MIW in Japan. Astro shipped two of the machines to its New Jersey plant and two machines to its Illinois plant. It was one of the two machines sent to the Illinois plant which allegedly caused personal injuries to the plaintiff, for which the plaintiff now seeks damages from the defendant.

In his complaint the plaintiff alleged that the defendant manufactured, designed, and sold the air cell former in question, and that on April 11, 1983, the plaintiff was injured while cleaning the machine pursuant to his employment duties at Astro. In its motion to dismiss, the defendant admitted that it manufactured the machine and that all four of the machines were delivered into the possession of the plaintiff's employer in Japan, and stated that it was "entirely fortuitous" that two of the four machines were shipped by Astro to Illinois from Japan. The affidavit filed by Motoo Morita, the defendant's president, in support of its motion to dismiss, revealed that MIW was primarily engaged in the business of manufacturing machinery used to make springs for automobiles. According to Morita, MIW has made a total of only nine air cell formers, four of which were purchased by Astro. None of the five remaining air cell formers were used in the United States. Morita further stated that the four machines purchased by Astro were delivered into the custody of Astro agents in Japan, and that Astro transported the machines from Japan. Morita also alleged that "MIW is informed and believes that two of the air cell formers were transported by Astro Packaging Co. to Alsip, Illinois."

The affidavit disclosed that the negotiations for the purchase of the four air cell formers between Astro and MIW took place at the following locations and times:

| | |
|---|---|
| September 22 and 23, 1980 | Monchengladbach, West Germany |
| September 17—19, 1980 | Hawthorne, New Jersey |
| July 21—23, 1981 | MIW plant, Japan |
| September 24, 1981 | Hawthorne, New Jersey |
| January 25—27, 1982 | MIW plant, Japan |
| April 27—May 1, 1982 | MIW plant, Japan |
| October 17—20, 1983 | MIW plant, Japan. |

Morita stated that the contract was never negotiated in Illinois. All payments were received by MIW in Japan and sent by Astro from New Jersey. The affidavit reveals that gross income from the sale of air cell formers has amounted to less than 7.6% of the gross receipts of MIW from all sources. Morita also stated that MIW "does not own or operate any manufacturing plant or other business in Illinois"; that "MIW has not in the past employed any business or other agents in Illinois nor maintained any office in the State"; and that "[a]ll witnesses to the design process, manufacturing decisions, and assembly process are in Japan."

The record in this case further reveals that MIW had been served with summons in Japan. Additionally, no counteraffidavits were filed by the plaintiff in response to the defendant's motion to dismiss and supporting affidavit. The record does not include the contract between the Astro corporation and MIW for the sale of the four air cell formers.

After the motion to dismiss was briefed and argued, the trial judge held that the nonresident defendant did not have sufficient minimum contacts with the State of Illinois to sustain jurisdiction under the long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209). The judge en-

tered a final order dismissing MIW, and as stated previously, the appellate court reversed that order.

The sole issue presented in this appeal is whether the defendant's contacts with the State of Illinois are sufficient to subject the defendant to the *in personam* jurisdiction of the Illinois courts.

The plaintiff asserts here that personal jurisdiction of MIW is predicated upon sections 2—209(a)(1) and (a)(2) of the Illinois long arm statute, which provide:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State." Ill. Rev. Stat. 1985, ch. 110, pars. 2—209(a)(1), (a)(2).

However, for the purpose of this appeal we need not determine whether the defendant's activities meet the requirements of the long arm statute. Even assuming *arguendo* that the defendant's activities did constitute the transaction of business or the commission of a tortious act within this State, the fact that jurisdiction may be predicated under the long arm statute does not necessarily mean that jurisdiction over this defendant is proper. The exercise of jurisdiction over this defendant must comport with the principles of due process, and in this case we find that it does not. See *People ex rel. Mangold v. Flieger* (1985), 106 Ill. 2d 546, 550.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444

U.S. 286, 291, 62 L. Ed. 2d 490, 497, 100 S. Ct. 559, 564.) To subject a defendant to a judgment *in personam*, due process requires that the defendant have certain minimum contacts with the forum State such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343.

In *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2181, the Supreme Court explained that the due process clause requires that a court exercise jurisdiction only over defendants with "contacts, ties, or relations" with the forum State sufficient to provide them with fair warning their activities may subject them to suit there. This "fair warning" requirement has been met when a defendant has " 'purposefully directed' [its] activities at residents of the forum [citation] and the litigation results from alleged injuries that arise out of or relate to' those activities [citation]." (*Burger King*, 471 U.S. at 472, 85 L. Ed. 2d at 541, 105 S. Ct. at 2182.) By requiring these minimum contacts, the due process clause affords "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567.

In *World-Wide Volkswagen* the Supreme Court rejected the notion that foreseeability of causing injury in another State was sufficient to establish minimum contacts. (444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567.) Rather, "the foreseeability that is critical to due process analysis *** is that the defendant's conduct and

connection with the forum State are such that he should reasonably anticipate being haled into court there." (444 U.S. at 297, 62 L. Ed. 2d at 501, 100 S. Ct. at 567.) Although the determination of when a defendant should "reasonably anticipate" out-of-State litigation will depend on the quality and nature of the defendant's activities in the forum State, it is, nevertheless, "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.

By "purposefully availing" itself of opportunities in the forum State, such as by purposefully directing itself to forum residents, a defendant subjects itself to the possible exercise of that forum's jurisdiction. Satisfaction of this "purposeful availment" requirement ensures that an alien defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral act of a consumer or some other third person. (*Burger King*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. 2183.) Jurisdiction will only be proper where the contacts proximately result from actions by the *defendant himself* that create a "substantial connection" with the forum State. (See *Kulko v. California* (1977), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690.) Only in situations "where the defendant 'deliberately' has engaged in significant activities within a State [citation] or has created 'continuing obligations' between himself and residents of the forum [citation] [has] he manifestly *** availed himself of the privilege of conducting business there, and *** it is not presumptively unreasonable to require him to submit to *** litigation in that forum ***." *Burger*

*King*, 471 U.S. at 475-76, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184.

Once it has been determined that a defendant's conduct establishes minimum contacts with the forum State, these contacts may be considered in light of several other factors to determine whether the assertion of *in personam* jurisdiction comports with due process. (*Burger King*, 471 U.S. at 476, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184.) In reviewing these factors, the Supreme Court in *World-Wide Volkswagen* held that the burden on the defendant in being forced to litigate in a foreign forum should always be the primary concern in any due process analysis. (*World-Wide Volkswagen*, 444 U.S. at 292, 62 L. Ed. 2d at 498, 100 S. Ct. at 564.) This is especially true when, as here, a court is dealing with an international defendant. (See *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026.) Other factors to be considered by the court in determining the reasonableness of requiring a defendant to litigate in a foreign forum include the forum State's interest in resolving the dispute, the plaintiff's interest in obtaining relief, and the interests of the several States, including the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive social policies. (*Asahi*, 480 U.S. at 113, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034.) With regard to this final factor, it is clear that when concerned with an international defendant, courts are to consider the procedural and substantive policies of those other *nations* whose interests would be affected by the assertion of jurisdiction by the forum court. (*Asahi*, 480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034.) Concomitantly, the forum court must be mindful of the Federal government's interest in maintaining its foreign relations policies. (480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034.) Quite clearly, therefore, "[g]reat care and reserve

should be exercised when extending our notions of personal jurisdiction into the international field." *United States v. First National City Bank* (1965), 379 U.S. 378, 404, 13 L. Ed. 2d 365, 381, 85 S. Ct. 528, 542 (Harlan, J., dissenting); see *Asahi*, 480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034; *Insurance Co. of North America v. Marina Salina Cruz* (9th Cir. 1981), 649 F.2d 1266; see also Born, *Reflections on Judicial Jurisdiction in International Cases*, 17 Ga. J. Int'l Comp. L. 1 (1987).

Applying these principles to the facts before us, we hold that MIW did not have the requisite minimum contacts with the State of Illinois to subject it to the personal jurisdiction of the circuit court.

The thrust of the plaintiff's due process argument here is that MIW should have reasonably anticipated being sued in Illinois because it directly sold its products to a New Jersey corporation that had an industrial plant in Illinois. Specifically, the plaintiff alleges that MIW must have had either "actual or constructive knowledge" that Astro had a plant in Illinois and therefore should have anticipated that the product may find its way into Illinois. According to the plaintiff, MIW's intentional act of placing its products into the stream of commerce by delivering the air cell formers to Astro in Japan, coupled with MIW's "actual or constructive" knowledge that some of these products would eventually find their way to Illinois, is sufficient to form the basis for State court jurisdiction under the due process clause.

Most recently, the United States Supreme Court in *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026, considered whether the mere awareness on the part of a foreign defendant that the product it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes "mini-

mum contacts" between the defendant and the forum State so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343.) In *Asahi*, the plaintiff, a California resident, was injured while riding a motorcycle on a California highway. Thereafter, alleging in part that a defective tire tube had caused his accident, the plaintiff sued the Taiwanese manufacturer of the tire tube, Cheng Shin Rubber Industrial Company, in a California court. Seeking indemnification, Cheng Shin filed a cross-complaint against the manufacturer of the tube's valve assembly, Asahi Metal Industry Company, Ltd. (Asahi), a Japanese corporation. Eventually all claims were settled except for the cross-claim between the two manufacturers. Asahi argued that it should not be subject to suit in California and moved to quash Cheng Shin's service of summons on the ground that the due process clause of the fourteenth amendment prohibited California from exercising jurisdiction over Asahi. The superior court denied the motion, finding it reasonable for an international business firm such as Asahi to defend claims concerning its product in the United States and elsewhere. The California court of appeals issued a writ mandating that the superior court quash the summons, concluding that "it would not be reasonable to require Asahi to respond in California solely on the basis of ultimately realized foreseeability that the product into which its component was embodied would be sold all over the world including California." *Asahi Metal Industry Co. v. Superior Court* (1983), 147 Cal. App. 3d 30, _____, 194 Cal. Rptr. 741, 744.

Thereafter, the California Supreme Court reversed the court of appeals' ruling and discharged the writ.

(*Asahi Metal Industry Co. v. Superior Court* (1985), 39 Cal. 3d 35, 702 P. 2d 543, 216 Cal. Rptr. 385.) In its opinion the California Supreme Court noted that although Asahi knew that Cheng Shin sold tubes equipped with Asahi valves in California and throughout the world, Asahi had no other contacts with California; Asahi had no offices, property, or agents in California; did not advertise, solicit or do business there; and did not design the valve assembly specifically for the California market. The court further acknowledged that Asahi did not design or control the system of distribution that took its product into California. The record also revealed that Asahi sold valve assemblies to Cheng Shin on a regular basis, but the sales amounted to only a small percentage of Asahi's total business. Despite these facts the California Supreme Court overruled Asahi's objections as to personal jurisdiction, finding that the exercise of jurisdiction over Asahi did not violate the due process clause. It concluded that Asahi knew that some of the valve assemblies sold to Cheng Shin would be incorporated into tire tubes ultimately sold in California, and that Asahi benefited indirectly from the sale in California of products incorporating its components. (39 Cal. 3d at 41, 702 P.2d at 544-45, 216 Cal. Rptr. at 387.) The California Supreme Court considered Asahi's intentional act of placing its components into the stream of commerce—that is, by delivering the components to Cheng Shin in Taiwan—coupled with Asahi's awareness that some of the components would eventually find their way into California, sufficient to form the basis for State court jurisdiction under the due process clause.

On appeal, the United States Supreme Court unanimously reversed the holding of the California Supreme Court. (*Asahi*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026.) While the vote was unanimous, the members of the Court differed on the rationale for the decision.

Three members of the Court joined an opinion by Justice O'Connor, which held that there were no minimum contacts between Asahi and the State of California, and that even assuming there were minimum contacts, California's exercise of jurisdiction over Asahi was fundamentally unfair. These members of the Court based their finding of no minimum contacts on the narrow version of the stream of commerce theory of minimum contacts. (See *Humble v. Toyota Motor Co.* (8th Cir. 1984), 727 F.2d 709.) Three other members of the Court joined in a concurring opinion by Justice Brennan, which agreed with Justice O'Connor's fundamental fairness argument, but disagreed that there were no minimum contacts between Asahi and California. This opinion adhered to a broad version of the stream of commerce theory of minimum contacts. (See *Bean Dredging Corp. v. Dredge Technology Corp.* (5th Cir. 1984), 744 F.2d 1081; *Hedrick v. Daiko Shoji Co.* (9th Cir. 1983), 715 F.2d 1355.) A ninth justice, Justice Stevens, joined by two of the justices who had also joined Justice Brennan's concurring opinion, expressed no opinion on the question of whether the broad or narrow version of the stream of commerce theory was correct, but also stated that Asahi's regular delivery of a large volume of its products into the California market constituted minimum contacts even under Justice O'Connor's narrow version of the stream of commerce theory. Justice Stevens, like Justice Brennan, concurred in the result because he believed that California's exercise of jurisdiction over Asahi was fundamentally unfair.

To understand the differences between the positions of the various justices, in this extremely balkanized opinion, it is necessary to understand the differences between the narrow and broad versions of the stream of commerce theory. In *Asahi*, the four justices who adhered to the narrow version of the theory stated that a

defendant does not establish minimum contacts with the forum State unless it engages in "[a]dditional conduct" beyond merely placing products into the stream of commerce and knowing that the products will make their way into the forum State. (*Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1033.) In other words, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." (*Asahi*, 480 U.S. at 112, 94 L. Ed. 2d at 104, 107 S. Ct. at 1033.) Under this theory, examples of the type of additional conduct which a defendant could perform which would indicate an intent or purpose to serve the market in the forum State include: advertising in the forum State, providing advice to customers in the forum State, hiring a sales agent who will market the product in the forum State, or designing the product for the forum State.

Under the broad stream of commerce theory, on the other hand, so long as the defendant participates in the "regular and anticipated flow of products from manufacture to distribution to retail sale" in the forum State, and so long as the defendant is "aware that the final product is being marketed in the forum State," minimum contacts between the defendant and the forum State have been established. *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 107, 107 S. Ct. at 1035 (Brennan, J., concurring in part).

The disagreement between Justice O'Connor and Justice Brennan flowed from their adoption of differing interpretations of the stream of commerce theory as a basis for establishing minimum contacts. Using the narrow version of the theory, four members of the Court concluded that even if Asahi had been aware that some of the valves sold to Cheng Shin would be incorporated into

the tire tubes sold in California, that knowledge alone did not establish any action by Asahi to purposefully avail itself of the California market. Asahi had no offices, agents, employees or property in California, did not advertise or otherwise solicit business in California, and did not create, control or employ the distribution system that brought its valves into California; and there was no evidence that Asahi designed its product in anticipation of sales in California. These justices concluded that, in light of these facts, "the exertion of personal jurisdiction over Asahi by the Superior Court of California exceeds the limits of due process." (480 U.S. at 113, 94 L. Ed. 2d at 105, 107 S. Ct. at 1033.) On the other hand, the four justices who adhered to the broad version of the stream of commerce theory concluded that Asahi's regular and extensive sales of component parts to a manufacturer it knew was making regular sales of a product in California was sufficient to establish minimum contacts for California. (*Asahi*, 480 U.S. at 121-22, 94 L. Ed. 2d at 110, 107 S. Ct. at 1037-38 (Brennan, J., concurring).) Justice Stevens, the ninth justice, who did not endorse either the broad or the narrow theory, stated that he believed, even under the narrow theory, Asahi's awareness of the large volume of its products that was being continuously sold in California constituted purposeful availment of the California market. 480 U.S. at 122, 94 L. Ed. 2d at 111, 107 S. Ct. at 1038 (Stevens, J., concurring in part).

In fact, a majority of the members of the Court in *Asahi* were only able to agree on a rationale for their decision, which depended not on the stream of commerce theory or minimum contacts but upon the unfairness of subjecting the defendant to California jurisdiction under the facts of the case. Eight members of the Court joined in that part of Justice O'Connor's opinion which stated that:

"When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. In the present case, however, the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi are slight. All that remains is a claim for indemnification asserted by Cheng Shin, a Taiwanese corporation, against Asahi. The transaction on which the indemnification claim is based took place in Taiwan; Asahi's components were shipped from Japan to Taiwan. Cheng Shin has not demonstrated that it is more convenient for it to litigate its indemnification claim against Asahi in California rather than in Taiwan or Japan." 480 U.S. at 114, 94 L. Ed. 2d at 105-06, 107 S. Ct. at 1034.

The majority further found that California's interest in resolving the dispute was minimal because Cheng Shin was not a California resident, and also because it was unclear that California law would be applied in litigating an indemnity claim relating to a transaction that took place in Taiwan. The majority also reasoned that consideration of the procedural and substantive policies of foreign *nations* (as opposed to those of the several States as suggested in *World-Wide Volkswagen*) and the need to advance and protect American foreign relations policies made jurisdiction particularly unreasonable when the burdens on alien defendants outweighed the minimal interests of the plaintiff and the forum State. The Court concluded by stating:

"Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair." 480 U.S. at 116, 94 L. Ed. 2d at 107, 107 S. Ct. at 1035.

As can be seen from this exposition, it is not possible to determine from *Asahi* whether the broad or the nar-

row version of the stream of commerce theory is correct. We need not decide this issue, however, for we believe that even under the broader version of the stream of commerce theory there were no minimum contacts between defendant Morita and the State of Illinois. Under the facts presented in the instant case, an exertion of personal jurisdiction over this defendant by the Illinois courts would still be inconsistent with due process. Under either interpretation of the stream of commerce theory, it is clear that purposeful availment of the forum's market requires, at a *minimum*, that the alien defendant is "*aware* that the final product is being marketed in the forum State." (Emphasis added.) (See *Asahi*, 480 U.S. at 117, 94 L. Ed. 2d at 107, 107 S. Ct. at 1035 (Brennan, J., concurring).) The record in this case is totally devoid of any evidence that the defendant was aware either during contract negotiations or at the time of delivery of the products to Astro in Japan that Astro intended to transport two of the air cell formers to Illinois, or that Astro even had a plant in Illinois. Without any evidence of such knowledge on the part of the defendant, on this basis alone we would have to conclude, under either theory, that Asahi made no effort, directly or indirectly, to serve the market for its product in Illinois and that the air cell formers were, therefore, brought into Illinois solely by the unilateral act of Astro. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (*Hanson v. Denckla* (1957), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1239-40; see also *World-Wide Volkswagen*, 444 U.S. at 298, 62 L. Ed. 2d at 502, 100 S. Ct. at 567.) The fact that the defendant now knows the machines were sent to Illinois, as revealed in the defendant's affidavit, is of no consequence in the determination of whether

this defendant has purposefully availed itself of the privilege of conducting activities within Illinois.

The plaintiff in this case places principal reliance on *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, and *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432. Plaintiff's reliance on these cases, however, is misplaced.

In *Gray*, which involved a Wisconsin manufacturer, the court held that it was a fair inference from the record that a manufacturer of a commercial product in a State bordering Illinois had purposefully availed itself of the Illinois market even if it happened to convey its product to Illinois through independent middlemen. Here, in contrast, while it would be reasonable to assume that Morita had availed itself of the United States market, there is no showing in the record that Morita purposefully directed its products into Illinois. In fact, if it purposefully directed its products into any particular State, that State was New Jersey, and not Illinois.

*Connelly v. Uniroyal* is also distinguishable. In *Connelly*, the foreign defendant/manufacturer availed itself of the Illinois market to the extent that several thousand of its tires per year were sold to the ultimate consumer in Illinois. Here, in contrast, we have a single isolated transaction between MIW, a Japanese corporation, and Astro, a New Jersey-based corporation, which just happened to transport two of the four machines it purchased from MIW to Illinois. The mere presence of a product in a State, without more, is not sufficient to subject the foreign manufacturer to the jurisdiction of the Illinois courts.

Because personal jurisdiction here fails that threshold test of "minimum contacts," we need not separately consider the convenience of any particular forum to the respective parties in this case. Factors such as the plaintiff's interest in obtaining relief, the burden on the

defendant in being forced to litigate in a foreign forum, and the forum State's interest in adjudicating the matter are generally addressed only after "it has been decided that a defendant purposefully established minimum contacts with the forum State." (*Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543, 105 S. Ct. 2174, 2184.) As an aside, however, we note that without any evidence in the record as to the nature of the defendant's financial status, we could not assume that it would be less burdensome for the defendant to litigate in Illinois than for the plaintiff to sue in Japan. Plaintiff also argues here that because Illinois is the situs of the injury, it has a strong interest in applying its laws to the controversy. However, the issue here is personal jurisdiction, not choice of law. Illinois does not acquire that jurisdiction by being the "center of gravity" of the controversy, or the most convenient location for litigation. (See *Hanson v. Denckla* (1957), 357 U.S. 235, 254, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.) As stated by the Supreme Court in *World-Wide Volkswagen*:

> "[T]he Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington, supra* at 319. Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. *Hanson v. Denckla, supra* at 251, 254." *World-Wide Volkswagen*, 444 U.S. at 294, 62 L. Ed. 2d at 499-500, 100 S. Ct. at 565-66.

We note further that we are also unpersuaded by the appellate court's contention in the instant case that the

unfavorable trade balance between the United States and Japan somehow supports the exercise of jurisdiction over this defendant. International trade policy, or for that matter foreign relations, is not our province. See *Springfield Rare Coin Galleries, Inc. v. Johnson* (1986), 115 Ill. 2d 221.

In conclusion, personal jurisdiction is resolved by considering the acts of the defendant. Due process mandates at the outset some deliberate effort by the defendant to do business in the forum State, "thus invoking the benefits and protections of its laws." (*Burger King*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183.) The defendant in the instant case has done nothing to purposefully avail itself of the privilege of conducting activities within Illinois. Therefore the circuit court of Cook County is without authority to exercise personal jurisdiction over this defendant.

For the foregoing reasons the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.