# Illinois Official Reports

## Appellate Court

---

*Young v. Ford Motor Co.*, 2017 IL App (4th) 170177

---

| | |
|---|---|
| Appellate Court Caption | RIVONSHICA YOUNG; JOHNNY YOUNG; KIVONSHICA SHAW, Administrator of the Estate of Birdie Marie Shaw, Deceased; JOHNESHA YOUNG, a Minor, By and Through Her Father and Next Friend, Johnny Young; MARTAVIUS YOUNG, a Minor, By and Through His Father and Next Friend Johnny Young; SHANTEQUA MARZETTE; and STEFFOND MARZETTE, Plaintiffs, v. FORD MOTOR COMPANY, a Foreign Corporation Licensed to Do Business in the State of Illinois; FORD MOTOR CREDIT COMPANY, LLC; CARMAX INC., as Parent of Carmax Business Services, LLC, d/b/a Carmax Auto Finance; MERIDIAN MANAGEMENT CORPORATION, a Foreign Corporation Licensed to Do Business in the State of Illinois; ZHEJIANG JINFEI KAIDA WHEEL COMPANY, LTD.; JINFEI HOLDING GROUP COMPANY, LTD.; JINFEI HOLDING GROUP SUBSIDIARY NO. 800; ULTIMATE PRODUCT CORPORATION, a Dissolved California Corporation; DIRECT LINE OF NORTH FLORIDA, INC., f/k/a Direct Line Distributors, Inc., a Foreign Corporation Not Currently Registered to Do Business in the State of Illinois; DIRECT LINE OF ILLINOIS, INC., a Voluntarily Dissolved Florida Corporation Never Registered in Illinois; and UNKNOWN OWNERS, All d/b/a Dakar Custom Wheels; and ELIAS CARLOS and UNKNOWN OWNERS, d/b/a/ Carlos Auto Repair, Defendants (Rivonshica Young; Johnny Young; Kivonshica Shaw, Administrator of the Estate of Birdie Marie Shaw, Deceased; Johnesha Young, a Minor, By and Through Her Father and Next Friend, Johnny Young; Martavius Young, a Minor, By and Through His Father and Next Friend, Johnny Young; Shantequa Marzette; and Steffond Marzette, Plaintiffs-Appellants; Ultimate Product Corporation, Defendant-Appellant; Jinfei Holding Group Company, Ltd., and Zhejiang Jinfei Kaida Wheel Company, Ltd., Defendants-Appellees). |
| District & No. | Fourth District<br>Docket Nos. 4-17-0177, 4-17-0178, 4-17-0179 cons. |

| | |
|---|---|
| Filed | November 21, 2017 |
| | |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-L-186; the Hon. Rebecca S. Foley, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Shari D. Goggin-Ward, of Law Offices of Cozzi & Goggin-Ward, of Warrenville, and Paul R. Karasik, of Chicago, for appellant Ultimate Product Corp. |
| | William J. Cremer, Jennifer M. Lee, and Thomas R. Pender, of Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago, for appellees. |
| | |
| Panel | JUSTICE DeARMOND delivered the judgment of the court, with opinion. Justices Holder White and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    In October and December 2012, plaintiffs, Rivonshica Young; Johnny Young; Kivonshica Shaw, administrator of the Estate of Birdie Marie Shaw, deceased; Johnesha Young; a minor, by and through her father and next friend, Johnny Young; Martavius Young, a minor, by and through his father and next friend, Johnny Young; Shantequa Marzette; and Steffond Marzette filed second amended complaints against various defendants, including Ultimate Product Corporation (UPC), as well as Jinfei Holding Group Company, Ltd., and Zhejiang Jinfei Kaida Wheel Company, Ltd. (the Jinfei defendants). In January 2015, the Jinfei defendants filed a motion to dismiss plaintiffs' second amended complaints for lack of jurisdiction. In September 2016, the trial court granted the motion to dismiss. The court denied UPC's motion to reconsider in January 2017.[1]

_____

[1]These consolidated appeals seek review of the trial court's orders of September 2016 and January 2017. Defendant-appellant UPC appeals in case No. 4-17-0177. Plaintiffs-appellants Rivonshica Young and Johnny Young appeal in case No. 4-17-0178. Plaintiffs-appellants Rivonshica Young; Johnny Young; Kivonshica Young, administrator of the estate of Birdie Marie Shaw, deceased;

¶ 2    In these consolidated appeals, plaintiffs and UPC argue the trial court erred in dismissing all claims against the Jinfei defendants for lack of personal jurisdiction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In February 2009, Rivonshica Young purchased a 2000 Lincoln Navigator from Carmax, Inc., in Schaumburg, Illinois. In March 2010, Young purchased a set of four Dakar Imperial custom wheels at Carlos Auto Repair in Rockford, Illinois, where the wheels were installed on the Navigator.

¶ 5    On April 18, 2010, Birdie Marie Shaw was the front passenger of the Navigator driven by Rivonshica Young. Shantequa and Steffond Marzette and Johnny and Martavius Young were rear passengers in the vehicle. While traveling through McLean County, the right rear wheel came off the vehicle, which rolled over and injured passengers. Shaw died in the accident.

¶ 6    In October 2012, plaintiffs Rivonshica Young and Johnny Young filed a second amended complaint in Cook County circuit court against various parties, including the Jinfei defendants, seeking recovery for personal injuries allegedly sustained in the accident. The complaint alleged, *inter alia*, Meridian Management Corporation, together with the Jinfei defendants, UPC, Direct Line of North Florida, Inc. (Direct Line of North Florida), and Direct Line of Illinois, Inc. (Direct Line of Illinois), designed, manufactured, inspected, assembled, marketed, and distributed Dakar custom wheels and the wheels sold to plaintiffs were in a defective condition because they failed to come with bolts sufficient to properly fasten to the Navigator.

¶ 7    In December 2012, plaintiffs Kivonshica Shaw, administrator of the estate of Birdie Marie Shaw, deceased; Johnesha Young, by and through her father, Johnny Young; Martavius Young, by and through his father and next friend Johnny Young; Shantequa Marzette; and Steffond Marzette filed a second amended complaint, making similar claims against various parties, including the Jinfei defendants. The consolidated cases were transferred to McLean County circuit court based on the doctrine of *forum non conveniens* in June 2014.

¶ 8    In January 2015, the Jinfei defendants filed a motion to dismiss plaintiffs' second amended complaints for lack of jurisdiction pursuant to sections 2-301 and 2-619 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-301, 2-619 (West 2014)). The motion stated Jinfei Holding Group Company, Ltd., is the parent company of Zhejiang Jinfei Kaida Wheel Company, Ltd., and both are registered, incorporated, and located in the People's Republic of China.

¶ 9    The Jinfei defendants argued they were not subject to general or specific personal jurisdiction and traditional notions of fair play and substantial justice favored their dismissal from the actions. In regard to specific personal jurisdiction, the Jinfei defendants argued they did "not have the sufficient minimum contacts with Illinois that would serve as 'fair warning' to confer specific personal jurisdiction upon them." They claimed they were not registered in Illinois, maintained no offices or employees in Illinois, and had no bank accounts or other assets in Illinois. Moreover, they stated they made no direct product sales with customers based in Illinois and engaged in no business dealings with individuals or companies in Illinois during the previous five years.

Johnesha Young, a minor, by and through her father, Johnny Young; Martavius Young, a minor, by and through his father, Johnny Young; Shantequa Marzette; and Steffond Marzette appeal in case No. 4-17-0179.

¶ 10    UPC has its principal place of business in California. Direct Line of Illinois and Direct Line of North Florida (collectively, Direct Line) are dissolved Florida corporations. Articles of incorporation for Direct Line of Illinois indicate it was incorporated in the state of Florida in 2007.

¶ 11    The Jinfei defendants and UPC relied on affidavits and depositions of various individuals in this case. In his affidavit, Elias Carlos stated Carlos Auto Repair purchased four Dakar Imperial wheels from Direct Line of Illinois and Direct Line of North Florida, which were sold to Rivonshica Young and installed on the Navigator.

¶ 12    Donis Horne, Jr., testified he was general manager of Direct Line. At some point, Direct Line had a warehouse near Chicago, Illinois. When asked about receiving factory tests of wheels, Horne stated Direct Line "never talked directly" with the Jinfei defendants. Instead, the Jinfei defendants would provide test results to UPC, which would then provide the information to Direct Line. Horne stated the Jinfei defendants supplied the wheels to UPC, and Direct Line bought the wheels from UPC. Along with UPC, Horne stated the Dakar wheels were manufactured through a company called Tectran.

¶ 13    George Hsu testified he is the chief financial officer of UPC. He stated UPC and Direct Line entered into a manufacturing agreement for UPC to locate an overseas manufacturer for Direct Line's wheels. UPC acted as the facilitator between Direct Line and the Jinfei defendants regarding the design and production of the Dakar wheels. Direct Line would pass a 3-D rendering design to UPC, and UPC would pass it on to the Jinfei defendants. The Jinfei defendants would then send back a 2-D technical drawing, and UPC would pass that along to Direct Line. Once Direct Line approved the product design, it would place its order with UPC, which passed it along to the Jinfei defendants for production. The wheels would be shipped to the location determined by Direct Line, which included ports in Chicago, Illinois; Savannah, Georgia; and Jacksonville, Florida. Hsu stated when UPC orders products F.O.B., *i.e.*, free on board, the Jinfei defendants do not pay for the shipment from the Port of China to the United States. Hsu stated UPC would typically instruct the Jinfei defendants the orders "would need to go to whatever port of destination of [the] customer's choosing." UPC directs what shipper is to transport the products and where the container is to be shipped to the United States. Hsu testified an invoice from the Jinfei defendants indicated 260 cartons of wheels were shipped from Ningbo, China, to the Port of Los Angeles, California, with the place of delivery being Chicago, Illinois.

¶ 14    Vincent Huang, vice president of UPC, testified UPC imports and distributes automotive accessories and wheels. He stated the Jinfei defendants shipped the products to the ports arranged by UPC. He stated the Jinfei defendants were responsible for getting the products to the port in China, where ownership and risk of loss would transfer to UPC. The Jinfei defendants had no say as to where the containers were shipped from the port in China to the United States, as that decision was made by UPC or their customers. The Jinfei defendants would know the destination of the port. Huang stated the designation of Chicago in the invoices was a decision made by Direct Line. Huang stated he met with the Jinfei defendants in Nevada, California, and Indiana.

¶ 15    Fang Meijuan, a representative of the Jinfei defendants, testified the company ships the wheels to port and "[t]he actual export is done by the people arranged by the customer." She stated an invoice created by the Jinfei defendants reflected a shipment of wheels from China to Chicago in December 2008.

¶ 16    Zhang Tao, another representative of the Jinfei defendants, testified to an exhibit indicating four wheels were sold to UPC and shipped from China to Chicago in December 2008. He remembered the sale of another shipment of wheels that traveled to the Port of Chicago on its way to Elkhart, Indiana. Tao stated he twice passed through Chicago on his way to Indiana.

¶ 17    Xia Qing, the business manager for Jinfei Holding Group Company, Ltd., stated in his 2014 affidavit the Jinfei defendants do not have property, offices, or employees in Illinois and they are not registered to do business in Illinois. He also stated no employees of the Jinfei defendants traveled to Illinois for any business purposes in the past five years.

¶ 18    In his 2015 discovery deposition, Qing stated he was a marketing manager for Zhejiang Jinfei Kaida Wheel Company. He testified he conducts market research and develops customers. He stated employees of the Jinfei defendants have traveled through Chicago on their way to Indiana and Ohio.

¶ 19    In September 2016, the trial court found it had no jurisdiction over the Jinfei defendants under the Illinois long-arm statute (735 ILCS 5/2-209 (West 2016)), as they were not doing business in Illinois, had not committed a tortious act within Illinois, and had entered into no contracts with anyone in Illinois. The court found jurisdiction over the Jinfei defendants would also violate due process, stating as follows:

"[The Jinfei defendants] are registered and incorporated in China. Jinfei defendants are located in China. They are not registered to do business in Illinois. They have no registered agent in the state of Illinois. They have not owned, rented or leased any property in Illinois. They have not operated any Illinois plant or employed anyone within the state of Illinois. They have paid no taxes in the state of Illinois, have no assets within the state, [and] do not manufacture any products within the state. They have no Illinois customers, nor do they have any ongoing relationships with any Illinois businesses, and they do not travel to Illinois for business purposes. Admittedly, some of their employees had a layover in Chicago while traveling to other locations; however, they were not availing themselves of Illinois for those business travels.

While they work with independent distributors, they have no control or specific knowledge of where the products['] ultimate destinations will be. Their transactions are complete when the product is delivered to a port in China. The purchaser is to then determine the destination from that point.

The Court finds also that it lacks specific jurisdiction over the Jinfei defendants in that they haven't directed any activities at Illinois, and the cause of action does not relate to any of their contacts within Illinois because the Court finds there are really none that exist.

At best, the Court finds the Jinfei defendants were aware that their products could arrive at the port of Chicago. The Court finds that it's insufficient to confer jurisdiction; and, therefore, it is not reasonable to confer jurisdiction. And the motion to dismiss is allowed."

¶ 20    In October 2016, UPC filed a motion to reconsider, which was joined by plaintiffs. In January 2017, the trial court denied the motion, stating the Jinfei defendants "did nothing to avail themselves of the [forum] of Illinois." Further, the court noted "[t]he wheels manufactured in China were shipped FOB to Ningbo, China, and the transaction ended at that

point. It was there in China that UPC, and not Jinfei, directed those wheels to the port of Chicago."

¶ 21　　Prior to beginning our analysis, we note the record in this case consists of over 9000 pages and 40 volumes. The parties have also filed lengthy briefs setting forth their arguments. In those briefs, the parties have stated facts with reference to the pages of the record. We would encourage the parties, especially in cases involving such a voluminous record, to also include the corresponding volume numbers where those pages can be found, thereby assisting the court to access the cited materials more expeditiously.

¶ 22　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　　Plaintiffs argue the trial court erred in dismissing all claims against the Jinfei defendants for lack of personal jurisdiction, claiming the Jinfei defendants had the requisite minimum contacts pursuant to the Illinois long-arm statute. We disagree.

¶ 24　　"It is settled that the plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident [defendant]." *Russell v. SNFA*, 2013 IL 113909, ¶ 28, 987 N.E.2d 778. The plaintiff's *prima facie* case may be overcome, however, by uncontradicted evidence defeating jurisdiction. *Hanson v. Ahmed*, 382 Ill. App. 3d 941, 943, 889 N.E.2d 740, 743 (2008). "When a trial court decides a jurisdictional question solely on documentary evidence and without an evidentiary hearing, as occurred in this case, our review is *de novo*." *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2016 IL App (1st) 151876, ¶ 36, 57 N.E.3d 656.

¶ 25　　The Illinois long-arm statute found in section 2-209 of the Procedure Code (735 ILCS 5/2-209 (West 2016)) "governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant." *Russell*, 2013 IL 113909, ¶ 29, 987 N.E.2d 778. Section 2-209 provides, in part, as follows:

> "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person *** to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts[.]" 735 ILCS 5/2-209 (West 2016).

Subsection (a) of section 2-209, which governs specific jurisdiction, lists 14 different actions by a defendant that will subject him or her to Illinois jurisdiction. 735 ILCS 5/2-209(a)(1) to (14) (West 2016). Subsection (b) contains provisions pertaining to general jurisdiction. 735 ILCS 5/3-209(b) (West 2016).

¶ 26　　Subsection (c) is a "catchall provision" that permits Illinois courts to " 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Russell*, 2013 IL 113909, ¶ 30, 987 N.E.2d 778 (quoting 735 ILCS 5/2-209(c) (West 2002)). In light of the catchall provision, the First District has found:

> "Because of the coextensive nature of the long-arm statute and due process requirements, the first step traditionally employed by Illinois courts in personal jurisdiction analysis, that is, whether the defendant performed any of the acts enumerated in the long-arm statute, is now 'wholly unnecessary.' [Citation.] In other words, the long-arm statute is satisfied when due process concerns are satisfied, regardless of whether the defendant performed any of the acts enumerated in the

long-arm statute. [Citation.]" *Keller v. Henderson*, 359 Ill. App. 3d 605, 612, 834 N.E.2d 930, 935 (2005).

¶ 27 Our supreme court agreed with this analysis, finding courts should not "consider our long-arm statute separately from federal due process concerns." *Russell*, 2013 IL 113909, ¶ 33, 987 N.E.2d 778. Thus, "[i]f both the federal and Illinois due process requirements for personal jurisdiction have been met, the Illinois long-arm statute is satisfied and no other inquiry is required." *Keller*, 359 Ill. App. 3d at 612, 834 N.E.2d at 935. However, if the requirements of due process are not satisfied, then personal jurisdiction under the long-arm statute is not proper. *Hanson*, 382 Ill. App. 3d at 943, 889 N.E.2d at 743.

¶ 28 "In all cases involving a nonresident defendant, before a court may subject the defendant to a judgment *in personam*, 'due process requires that the defendant have certain minimum contacts with the forum State such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." ' " *Russell*, 2013 IL 113909, ¶ 34, 987 N.E.2d 778 (quoting *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150, 530 N.E.2d 1382, 1385 (1988), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The determination of whether a defendant has the requisite minimum contacts depends on whether the plaintiff is seeking general or specific jurisdiction. *Russell*, 2013 IL 113909, ¶ 36, 987 N.E.2d 778. "General jurisdiction for a corporate defendant exists when it has engaged in continuous and substantial business within the forum, the paradigm example for a corporation being a location where it 'is fairly regarded as at home.' " *Russell*, 2013 IL 113909, ¶ 36, 987 N.E.2d 778 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

> "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state. [Citation.] Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain ' "single or occasional acts" ' in the state but only with respect to matters related to those acts. [Citation.]

> In *Burger King Corp.* [*v. Rudzewicz*, 471 U.S. 462, 473-74 (1985)], the United States Supreme Court explained the rationale for permitting the exercise of specific personal jurisdiction over a nonresident defendant who 'purposefully directs' its activities toward the forum, even if only for single or occasional acts in the forum state. First, the state has a manifest interest in providing its residents with a convenient forum for redressing injuries caused by nonresidents. Second, when a nonresident defendant purposefully derives benefit from its interstate activities in other jurisdictions it would be unfair to allow that defendant to avoid any legal consequences that proximately arose from those same activities. [Citation.]" *Russell*, 2013 IL 113909, ¶¶ 40-41, 987 N.E.2d 778.

¶ 29 In the case *sub judice*, plaintiffs do not argue Illinois may exercise general jurisdiction over the Jinfei defendants. Thus, we will focus our attention on specific jurisdiction, which requires (1) the corporate, nonresident defendant must have minimum contacts with Illinois in that (a) it purposefully directed its activities at this state and (b) plaintiffs' claims arose from or related to those contacts with Illinois (see *Burger King Corp.*, 471 U.S. at 472), and (2) it must be reasonable for Illinois to exercise jurisdiction over the defendant. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

¶ 30   In *World-Wide Volkswagen*, 444 U.S. at 297, the United States Supreme Court found the requirements of specific jurisdiction may be satisfied under the stream-of-commerce theory and concluded as follows:

> "[I]f the sale of a product of a manufacturer or a distributor *** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."

Thus, a forum state is allowed to exercise personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297-98.

¶ 31   The Supreme Court again addressed the stream-of-commerce theory in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987). There, the Japanese manufacturer Asahi knew the components it manufactured, sold, and delivered to a Taiwanese manufacturer were being sold in California. *Asahi*, 480 U.S. at 107. Asahi, however, took no other action specifically directed at the forum state. *Asahi*, 480 U.S. at 112-13 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). The Court held California courts could not exercise personal jurisdiction over Asahi, finding it would be unreasonable. *Asahi*, 480 U.S. at 112-13 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). However, the Court could not agree on the issue of minimum contacts and the reach of the stream-of-commerce theory.

¶ 32   Under a narrow theory espoused by Justice O'Connor, along with Chief Justice Rehnquist and Justices Powell and Scalia, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). Instead, additional conduct is required and may be evidenced by the nonresident defendant "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.).

¶ 33   Under a broad theory espoused by Justice Brennan, along with Justices White, Marshall, and Blackmun, the "additional conduct" need not be shown. Instead, the forum state can assert personal jurisdiction over a nonresident defendant if the defendant engages in "the regular and anticipated flow of products from manufacture to distribution to retail sale" and is "aware that the final product is being marketed in the forum State." *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment, joined by White, Marshall, and Blackmun, JJ.).

¶ 34   Thereafter, our supreme court in *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 158-59, 530 N.E.2d 1382, 1288-89 (1988), noted the fractured steam-of-commerce standards set forth in *Asahi* and declined to adopt either approach. However, the court concluded that under either interpretation, "it is clear that purposeful availment of the forum's market requires, at a *minimum*, that the alien defendant is '*aware* that the final product is being marketed in the forum State.'" (Emphasis in original.) *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1389 (quoting

*Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment, joined by White, Marshall and Blackman, JJ.)).

¶ 35    In *Wiles*, 125 Ill. 2d at 147, 530 N.E.2d at 1383, the plaintiff was injured by a machine at his employer's plant in Illinois. Plaintiff's employer had purchased the machine in Japan from the defendant, a Japanese machine manufacturer. *Wiles*, 125 Ill. 2d at 147, 530 N.E.2d at 1383. The supreme court found the record was "totally devoid" of any evidence that the Japanese defendant was aware the employer intended to transport the machine to Illinois or that the employer even had a plant in Illinois. *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1389. Instead, the court found the Japanese defendant's product was brought to Illinois "solely" by the unilateral act of the plaintiff's employer. *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1389. As the Japanese defendant had "done nothing to purposefully avail itself of the privilege of conducting activities within Illinois," Illinois courts had no authority to exercise personal jurisdiction over the defendant. *Wiles*, 125 Ill. 2d at 163, 530 N.E.2d at 1391.

¶ 36    The United States Supreme Court revisited the stream-of-commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (plurality opinion). In that case, the plaintiff was injured at his New Jersey workplace while operating a machine manufactured by a defendant based in England. *J. McIntyre*, 564 U.S. at 878. While the defendant did not market its products in New Jersey or ship its products there, it used an independent distributor to sell its products in the United States. However, it had no control over the distributor. *J. McIntyre*, 564 U.S. at 878. Also, the defendant's company officials attended trade shows in states other than New Jersey. *J. McIntyre*, 564 U.S. at 878.

¶ 37    While not agreeing on the application of the stream-of-commerce theory, six justices found New Jersey could not exercise specific personal jurisdiction over the British defendant. *J. McIntyre*, 564 U.S. at 887, 893. In a plurality opinion, Justice Kennedy, joined by Chief Justice Roberts and Justices Scalia and Thomas, endorsed the narrow stream-of-commerce theory, which "merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition—as where manufacturers or distributors 'seek to serve' a given State's market." *J. McIntyre*, 564 U.S. at 882. Under Justice Kennedy's view, the principal inquiry in specific jurisdiction cases is whether the defendant's activity evinces the intent to submit to the sovereign's power by showing the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum States, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) *J. McIntyre*, 564 U.S. at 882. Moreover, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre*, 564 U.S. at 882.

¶ 38    In a concurring opinion, Justice Breyer, joined by Justice Alito, agreed with the plurality that the New Jersey court could not exercise personal jurisdiction but disagreed with the plurality's "strict rules" to limit jurisdiction. *J. McIntyre*, 564 U.S. at 888-90 (Breyer, J., concurring in the judgment, joined by Alito, J.).

¶ 39    In dissent, Justice Ginsburg, joined by Justices Sotomayor and Kagan, argued the defendant could not escape the jurisdictional reach of New Jersey courts. Because the defendant engaged an American-based distributor, Justice Ginsburg would have found it "purposefully availed itself" of the entire United States market. *J. McIntyre*, 564 U.S. at 905 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.). To allow a nonresident

- 9 -

defendant to escape jurisdiction in these circumstances "would undermine principles of fundamental fairness" and "insulate the foreign manufacturer from accountability in court at the place within the United States where the manufacturer's products caused injury." *J. McIntyre*, 564 U.S. at 906 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.).

¶ 40 Following the decision in *J. McIntyre*, our supreme court revisited the stream-of-commerce theory and took away three points from that case. First, the court found the Supreme Court "unanimously endorsed the continued validity of the stream-of-commerce theory from *World-Wide Volkswagen* to establish specific personal jurisdiction, although the proper application of that theory is not settled." *Russell*, 2013 IL 113909, ¶ 67, 987 N.E.2d 778. Second, "specific jurisdiction should *not* be exercised based on a single sale in a forum, even when a manufacturer or producer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states.' (Emphasis in original [and] internal quotation marks omitted.) [Citation.]" *Russell*, 2013 IL 113909, ¶ 68, 987 N.E.2d 778. Third, a minority of the Supreme Court believes "a broader stream-of-commerce theory should be applied to adapt to modern globalized commerce and is warranted under *International Shoe*'s focus on 'notions of fair play and substantial justice.' [Citation.]" *Russell*, 2013 IL 113909, ¶ 69, 987 N.E.2d 778.

¶ 41 After analyzing the stream-of-commerce authority, the supreme court considered the facts in *Russell*. There, the defendant, a French corporation with no offices, assets, property, or employees in Illinois, manufactured tail-rotor bearings for the aerospace industry, including a helicopter that crashed in Illinois. *Russell*, 2013 IL 113909, ¶¶ 4-10, 987 N.E.2d 778. The defendant sold its custom-made bearings to Agusta, an Italian helicopter manufacturer, as well as Hamilton Sundstrand, a California aerospace manufacturer. *Russell*, 2013 IL 113909, ¶ 14, 987 N.E.2d 778. The defendant's employee stated in a deposition he attended at least three meetings with Hamilton Sundstrand in Rockford, Illinois, to discuss the defendant's products. *Russell*, 2013 IL 113909, ¶ 16, 987 N.E.2d 778.

¶ 42 The supreme court found the defendant engaged in Illinois-specific activity to establish the requisite minimum contacts. *Russell*, 2013 IL 113909, ¶ 78, 987 N.E.2d 778. The court noted Agusta and its subsidiary acted as the American distributor of the defendant's bearings and constituted the sole way the defendant's bearings would reach consumers in the United States, including Illinois. *Russell*, 2013 IL 113909, ¶¶ 72-73, 987 N.E.2d 778. The court found the defendant had a business relationship with Hamilton Sundstrand in Rockford, which was listed as the purchasing location for Hamilton Sundstrand in regard to approximately $1 million of the defendant's products. *Russell*, 2013 IL 113909, ¶ 79, 987 N.E.2d 778. Further, a proprietary sharing agreement between the defendant and Hamilton Sundstrand noted the latter's Rockford business address and provided the agreement was to be governed by the laws of the state of Illinois. *Russell*, 2013 IL 113909, ¶ 18, 987 N.E.2d 778. The court also found the defendant's employee made trips to Rockford to solicit business in Illinois on the defendant's behalf. *Russell*, 2013 IL 113909, ¶ 80, 987 N.E.2d 778. The court concluded as follows:

"[W]e find that defendant has the requisite minimum contacts with Illinois for purposes of specific personal jurisdiction. Defendant is a French manufacturer of custom-made bearings for the aerospace industry. Defendant knowingly used a distributor, Agusta and AAC, to distribute and market its products throughout the world, including the United States and Illinois. Defendant's distributor has made multiple sales of its products in Illinois. In addition, defendant has a business relationship with a division of

Hamilton Sundstrand in Rockford, Illinois, for defendant's custom-made bearings used in airplanes." *Russell*, 2013 IL 113909, ¶ 85, 987 N.E.2d 778.

¶ 43    Considering the law and facts of the case before us, we find plaintiffs have not met their burden to show the Jinfei defendants had the requisite minimum contacts with Illinois for the courts of this state to exercise personal jurisdiction over them. The evidence indicates the Jinfei defendants are Chinese companies that are not registered to do business in Illinois. Moreover, they have no offices, property, assets, or employees in Illinois. The United States Supreme Court has stated "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. ___, ___, 134 S. Ct. 1115, 1122 (2014). Here, the Jinfei defendants neither engaged a business entity in Illinois nor signed an agreement subjecting themselves to the protections of Illinois law. The Jinfei defendants did not purposefully direct its activities toward Illinois to sell its products. Instead, the evidence indicates the Jinfei defendants worked with UPC, which acted as a facilitator to its Direct Line customer. The wheels were manufactured in China and shipped F.O.B. to a Chinese port, where the Jinfei defendants' role in the transaction concluded. See *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188 (5th Cir. 1978) (stating "[s]hipment 'FOB Florida' simply means that title to the goods and the risk of their loss passed to [the plaintiff] in Florida"); *Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co.*, 612 F. Supp. 2d 813, 827 (S.D. Tex. 2009) (stating "[t]he existence of a Free on Board ('F.O.B.') term in a contract *** is one factor to consider in determining whether the defendant has 'minimum contacts' with the forum State"). The Jinfei defendants had no control over the ultimate destination of their products, as UPC or its customer would determine the port of entry into the United States. While plaintiffs contend the Jinfei defendants shipped products to the port of Chicago, any decision on destination was made at the direction of UPC or UPC's customer. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (stating the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

¶ 44    Plaintiffs rely in large part on our supreme court's decision in *Russell*. However, we find *Russell* distinguishable. Here, the Jinfei defendants have not engaged a business entity in Illinois and thereby directly benefitted from this state's "system of laws, infrastructure, and business climate." *Russell*, 2013 IL 113909, ¶ 81, 987 N.E.2d 778. The Jinfei defendants have not targeted or entered into contracts with Illinois businesses. No evidence indicates the Jinfei defendants specifically designed its wheels for market in Illinois, advertised or solicited customers in Illinois, or established channels for providing regular advice or assistance for customers in Illinois. See *Asahi*, 480 U.S. at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. ___, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475). The Jinfei defendants did not direct their business activities at the state of Illinois or have long-standing business relationships with companies in Illinois. Moreover, the fact employees of the Jinfei defendants may have passed through a Chicago airport before conducting business elsewhere in the United States amounts to *de minimis* contact with the state, in contrast to the defendant in *Russell* that had a business relationship with a company in

Rockford and whose employee made trips to Rockford to solicit business on the defendant's behalf. Here, plaintiffs have failed to show the Jinfei defendants have the requisite minimum contacts with Illinois, and the exercise of specific personal jurisdiction over the Jinfei defendants would not comport with federal and Illinois due process in this case. Given the Jinfei defendant's lack of minimum contacts in this state, we need not decide whether it would be reasonable to require them to litigate the matter in Illinois. Accordingly, we find the trial court did not err in granting the Jinfei defendants' motion to dismiss for lack of personal jurisdiction.

¶ 45                                III. CONCLUSION

¶ 46         For the reasons stated, we affirm the trial court's judgment.

¶ 47         Affirmed.